In re JKJ CHEVROLET,
INCORPORATED,
Debtor.

FORD MOTOR CREDIT COMPANY,
Plaintiff–Appellee,

v.

REYNOLDS & REYNOLDS COMPANY,
Defendant–Appellant,

and

Reyna Financial Corporation, Defendant.

No. 93–1918.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1994.

Decided June 8, 1994.

**ARGUED:** Arnold Steven Albert, Friedlander, Misler, Friedlander, Sloan & Herz, Washington, DC, for appellant. George Richard Pitts, Dickstein, Shapiro & Morin, Washington, DC, for appellee. **ON BRIEF:** Jerome Ostrov, Friedlander, Misler, Friedlander, Sloan & Herz, Washington, DC, for appellant. Bradley J. Swallow, Dickstein, Shapiro & Morin, Washington, DC, for appellee.

Before WILKINS, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.

Affirmed by published opinion. Judge WILKINS wrote the opinion, in which Senior Judge SPROUSE and Senior Judge CHAPMAN, joined.

## OPINION

WILKINS, Circuit Judge:

During the liquidation of JKJ Chevrolet, Incorporated (JKJ) pursuant to Chapter 7 of the Bankruptcy Code, *see* 11 U.S.C.A. §§ 701–728 (West 1993), Reynolds & Reynolds Company (Reynolds) sought to recover from JKJ's principal secured creditor, Ford Motor Credit Company (Ford Credit), the cost of goods and services provided to JKJ by Reynolds. Reynolds proceeded under 11 U.S.C.A. § 506(c) (West 1993) on the theory that Ford Credit had benefitted from the provision of goods and services to JKJ. The bankruptcy court allowed Reynolds' claim against Ford Credit in the amount of $94,846.41. The district court reversed, concluding that Reynolds did not have standing to proceed under § 506(c). 158 B.R. 614. We affirm.

### I.

JKJ operated numerous automobile dealerships in Northern Virginia. Ford Credit provided floorplan financing to four of the dealerships, holding a first priority security interest in nearly all of the assets of those dealerships including the motor vehicle and parts inventories, accounts receivable, furniture, fixtures, equipment, contract rights, and general intangibles. In October 1990, JKJ purchased a computer system from Reynolds. To facilitate financing, JKJ immediately resold the system to Reyna Financial Corporation (RFC), a subsidiary of Reynolds, which then leased the system back to JKJ. As part of the original purchase agreement, Reynolds agreed to provide JKJ with hardware and software support, maintenance services, and licensing of the computer software. Pursuant to a subsequent contract, Reynolds also agreed to provide JKJ with automotive business forms for the computer.

In October 1991, JKJ filed a Chapter 11 bankruptcy petition. Prior to conversion of the proceedings to a Chapter 7 liquidation, JKJ remained in possession of its property and continued to operate the dealerships using the computer. JKJ, however, made no postpetition payments for the computer system, services, or supplies. As a result, RFC filed a motion for relief from the automatic stay so that it could repossess the computer equipment. The bankruptcy court granted the motion, and on February 10, 1992, RFC repossessed the computer equipment.

JKJ continued to operate, manually performing most of the functions previously performed by the computer. However, JKJ was forced to obtain another computer to provide access to a vehicle locator service. JKJ operated in this manner until March 10, 1992, when the dealerships were sold as a going concern. On that same day, the bankruptcy court granted administrative status to Reynolds' claim for the $131,529.02 in postpetition goods and services provided to JKJ.

Without requesting that JKJ, as debtor in possession, or the subsequently appointed trustee pursue a § 506(c) recovery, Reynolds sought an order under § 506(c) allowing it to surcharge Ford Credit for the postpetition goods and services provided to JKJ. The bankruptcy court held a hearing on the application, during which Reynolds attempted to show that the goods and services it provided were essential to the operation of the computer, that the computer was necessary to

the operation of JKJ, and that Ford Credit had realized approximately $1,000,000 more from the continued operation and eventual sale of the dealerships as a going concern than it would have realized if the assets of JKJ had been immediately liquidated. At the conclusion of the hearing, the bankruptcy court found that Reynolds was entitled to at least partial payment from Ford Credit for the postpetition goods and services provided to JKJ. After supplemental briefing, the bankruptcy court entered an order permitting Reynolds to surcharge Ford Credit in the amount of $94,846.41.[1]

Ford Credit appealed the decision. The district court reversed, finding it unnecessary to decide whether the cost of the goods and services provided by Reynolds was properly chargeable against Ford Credit because Reynolds did not have standing to bring a claim under § 506(c).

Reynolds maintains that although § 506(c) purports to apply only to trustees, it should be interpreted as extending standing to administrative claimants in order to prevent windfalls to secured creditors. Reynolds further asserts that it should be allowed to surcharge Ford Credit for the cost of goods and services provided to JKJ because the costs were reasonable, were necessary to the continued operation of JKJ, and benefitted Ford Credit. Ford Credit argues that the plain language of § 506(c) does not grant standing to administrative claimants and that even if administrative claimants have standing to seek recovery for postpetition goods and services, Reynolds is not entitled to reimbursement from Ford Credit because the goods and services provided by Reynolds were unnecessary and did not benefit Ford Credit. Like the district court, we find the standing issue dispositive.

## II.

■ Generally, administrative expenses[2] are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral. *IRS v. Boatmen's First Nat'l Bank of Kan. City*, 5 F.3d 1157, 1159 (8th Cir.1993). Section 506(c) provides an exception to this general rule. *Id.* Pursuant to § 506(c):

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C.A. § 506(c). The purpose of this provision is to prevent a windfall to a secured creditor at the expense of the estate. *Boatmen's*, 5 F.3d at 1159. Thus, § 506(c) allows the trustee to recover administrative expenses from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor.

## A.

■ This court reviews questions of statutory interpretation de novo. *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992). Our review necessarily begins with an analysis of the language of the statute. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the language is plain and "the statutory scheme is coherent and consistent," there is no need to inquire further. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). "[T]he sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Only in those rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 298, 78 L.Ed.2d 17 (1983), in which a literal application of the statute

---

1. While it is not clear from the order of the bankruptcy court, the court apparently decided that Reynolds should be allowed to surcharge Ford Credit for only $94,846.41 of the $131,-529.02 in postpetition goods and services because Ford Credit provided floorplan financing to only four of JKJ's dealerships.

2. Administrative expenses include: "the actual, necessary costs and expenses of preserving the estate"; certain taxes, fines and penalties; and compensation and reimbursement for a limited range of services. *See* 11 U.S.C.A. § 503(b) (West 1993).

would thwart its obvious purpose, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), or in which a literal application of the statute would produce an absurd result, *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940), should the courts venture beyond the plain meaning of the statute.

▮▮▮ The language of § 506(c) is clear and unambiguous. It grants only trustees the authority to seek recovery of postpetition costs and expenses from the collateral of a secured creditor.[3] Limiting § 506(c) standing to trustees in the context of Chapter 7 proceedings is also consistent with a fundamental purpose of the Bankruptcy Code—equitable distribution to similarly situated creditors. *See* 11 U.S.C.A. §§ 726(b), 1123(a)(4) (West 1993); *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 923 (1st Cir.) (recognizing "the fundamental Code policy fostering equitable distribution among all creditors of the same class"), *cert. denied,* — U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). When a trustee recovers postpetition costs and expenses from a secured creditor pursuant to § 506(c), the recovered funds become available as an unencumbered asset for distribution to the unsecured creditors. *See* 11 U.S.C.A. §§ 541(a)(7), 726(a) (West 1993). Pursuant to the distribution rules of § 726(a), the unencumbered assets of an estate are distributed to each class of unsecured creditors in accordance with the priority rules of 11 U.S.C.A. § 507 (West 1993). 11 U.S.C.A. § 726(a). If, as often will be the case, the assets remaining in the estate are insufficient

to satisfy all of the claims of a particular class, the funds are divided among the claimants in that class on a pro rata basis. *See* 11 U.S.C.A. § 726(b).

Allowing a claimant to proceed directly against a secured creditor would circumvent this distribution scheme, potentially causing an inequitable division of the estate. *See In re Oakland Care Ctr., Inc.*, 142 B.R. 791, 794 (E.D.Mich.1992); *Boyd v. Dock's Corner Assocs. (In re Great N. Forest Prods., Inc.)*, 135 B.R. 46, 67 (Bankr.W.D.Mich.1991); *Central States, S.E. & S.W. Areas Pension Fund v. Robbins (In re Interstate Motor Freight Sys. IMFS, Inc.)*, 71 B.R. 741, 744–45 (Bankr.W.D.Mich.1987). For example, if an estate has no unencumbered assets, an administrative claimant recovering directly from a secured creditor might receive full reimbursement[4] while other administrative claimants, whose services were also necessary to the preservation of the estate, would receive nothing.[5] An administrative claimant proceeding against a secured creditor in effect would be granted priority over the other claimants in its same class.[6] We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly. *See Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) (stating that "if one claimant is to be preferred over others, the purpose should be clear from the statute"); *cf. Ron Pair Enters.*, 489 U.S. at 242 n. 5, 109 S.Ct. at 1030 n. 5.

## B.

Nonetheless, other Courts of Appeals have concluded that § 506(c) standing should not

---

**3.** Section 1107(a) provides that debtors in possession shall, with limited exceptions, have all the rights and powers of trustees. 11 U.S.C.A. § 1107(a) (West 1993). Therefore, even though § 506(c) uses the term "trustee," Congress clearly intended that debtors in possession have the authority to seek recovery of postpetition costs and expenses under § 506(c). *See* 124 Cong. Rec. 32,398 (1978) (stating that "the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party").

**4.** The amount chargeable against a secured creditor would be limited by the amount of benefit

conferred upon that secured creditor. *See* 11 U.S.C.A. § 506(c).

**5.** Of course, it is unlikely that all administrative claims would qualify for reimbursement from the collateral of a secured creditor under § 506(c) because an administrative claimant must be able to show that its goods or services benefitted a particular secured creditor. *See* 11 U.S.C.A. § 506(c).

**6.** An interpretation of § 506(c) as granting standing to individual claimants is likely to result in a flood of satellite litigation by those seeking to avoid a pro rata division of the estate. *In re Great N. Forest Prods.*, 135 B.R. at 69.

be limited to trustees and debtors in possession. *See Boatmen's,* 5 F.3d at 1159; *North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.),* 951 F.2d 229, 232 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *In re Parque Forestal, Inc.,* 949 F.2d 504, 511 (1st Cir.1991); *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Assoc. of Warner Robins, Ga. (In re Delta Towers, Ltd.),* 924 F.2d 74, 77 (5th Cir.1991); *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.),* 799 F.2d 91, 94 (3d Cir.1986).

The Court of Appeals for the Third Circuit chose to grant standing under § 506(c) to an administrative claimant based on its conclusion that the claimant was the only entity with an incentive to pursue the claim. *In re McKeesport,* 799 F.2d at 94. Other Courts of Appeals have essentially relied on *In re McKeesport* with little analysis except to note that denying standing to an administrative claimant would allow a secured creditor to reap a windfall, an inequitable result. *See Boatmen's,* 5 F.3d at 1159; *In re Palomar,* 951 F.2d at 232; *In re Parque Forestal,* 949 F.2d at 512; *In re Delta Towers,* 924 F.2d at 76–77. Thus, *In re McKeesport* and its progeny have chosen to ignore the plain language of the statute based on two assumptions: (1) that a trustee or debtor in possession often has no incentive to seek recovery of postpetition costs and expenses under § 506(c); and (2) that granting standing to an administrative claimant under § 506(c) is the only means available to prevent a windfall to a secured creditor when the trustee or debtor in possession fails or declines to seek a surcharge under § 506(c).

With respect to the incentive of trustees and debtors in possession to seek a surcharge under § 506(c), both owe fiduciary duties to the creditors of the estate. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355–56, 105 S.Ct. 1986, 1994–95, 85 L.Ed.2d 372 (1985). A failure to seek recovery of a qualifying claim under

§ 506(c) may constitute a breach of those duties. *Cf. Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750, 752–53 (4th Cir.1993) (stating that a trustee may be held personally liable for willful and deliberate violations of his fiduciary duties); *NBD Park Ridge Bank v. SRJ Enters., Inc. (In re SRJ Enters., Inc.),* 151 B.R. 189, 194–95 (Bankr.N.D.Ill.1993) (stating that a debtor in possession breaches its fiduciary duties to the creditors of the estate if it "unjustifiably fails to institute a suit to recover a voidable preference"). In addition, trustees are administrative claimants who are paid from the funds of the estate. *See* 11 U.S.C.A. §§ 330(a), 503(b)(2), 507(a)(1), 726(a)(1) (West 1993). If there are insufficient funds in the estate to pay all of the allowed administrative expenses, the trustee will not be paid in full, but will be required to share the funds of the estate on a pro rata basis with the other administrative claimants. *In re Great N. Forest Prods.,* 135 B.R. at 67 n. 27; *see* 11 U.S.C.A. §§ 503(b), 507(a)(1), 726(a)(1) (West 1993). Thus, not only does a trustee usually have a strong incentive to pursue § 506(c) claims, but both the trustee and debtor in possession have a fiduciary duty to pursue viable § 506(c) claims that would benefit the estate.

▮▮ The assumption that granting standing to claimants is the only way to prevent a windfall to secured creditors is also erroneous. If a trustee or debtor in possession fails to bring an action under § 506(c), the claimant or other interested party may: (1) request that the bankruptcy court compel the trustee or debtor in possession to seek recovery of postpetition costs and expenses pursuant to § 506(c), *see* 11 U.S.C.A. § 105(a) (West 1993); (2) request that the court remove the trustee, *see* 11 U.S.C.A. § 324(a) (West 1993); or (3) if the debtor is in possession of the estate, request that the court appoint a trustee, *see* 11 U.S.C.A. § 1104(a) (West 1993).[7] *In re Great N. Forest Prods.,* 135 B.R. at 69 n. 28. Since these procedures

---

**7.** Because it is not alleged that these procedures would be insufficient to prevent a windfall to a secured creditor, we need not decide whether a bankruptcy court could grant derivative standing to a claimant, allowing the claimant to prosecute

a § 506(c) action on behalf of the estate. *See In re So Good S. Potato Chip Co.,* 116 B.R. 144, 146 (Bankr.E.D.Mo.1990) (permitting an administrative claimant to prosecute a § 506(c) action on behalf of the estate).

are available to prevent a windfall to secured creditors, a literal application of § 506(c) would not thwart its obvious purpose and granting standing to claimants is not necessary to prevent an absurd result.[8]

### III.

In summary, the other Courts of Appeals to have addressed this issue appear to have based their broad interpretation of § 506(c) on the assumption that granting claimants standing is the only means available to prevent windfalls to secured creditors—an avowed purpose of § 506(c). If no other means were available, interpreting § 506(c) to grant standing to claimants might be justified as necessary to effectuate the purpose of the statute and prevent an absurd result. But, other procedures are available, and interpreting § 506(c) as granting direct standing to claimants conflicts with both the language of the statute and an express purpose of the Bankruptcy Code—equitable distribution to similarly situated creditors. Therefore, the plain meaning of the statute must be given effect. Under the plain language of § 506(c), Reynolds, an administrative claimant, does not have standing to proceed directly against Ford Credit to recover the cost of goods and services provided to JKJ. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*

---

8. Because the legislative history of § 506(c) does not address the issue of standing, a literal application of the language of the statute is not contrary to a clearly expressed legislative intent.