**In re K & L LAKELAND, INC., Debtor.**

**Bankruptcy No. 91–14554–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 15, 1995.

Robert G. Mayer, Mayer & Scanlan, P.C., Fairfax, VA, for Loudoun.

George R. Pitts, Dickstein, Shapiro & Morin, L.L.P., Washington, DC, for Ford Credit.

Dominique V. Sinesi, Henry & Henry, P.C., Fairfax, VA, for trustee.

### MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The principal question we address is whether a secured lender may be surcharged under 11 U.S.C. § 506(c) for the rent the debtor failed to pay to its landlord. The debtor, K & L Lakeland, Inc., is a former automobile dealership that originally filed for bankruptcy under Chapter 11. The dealership was located on property leased from the landlord, Loudoun Leasing Development Company ("Loudoun"). Shortly before this matter was converted to Chapter 7, Loudoun moved for authority to collect unpaid, postpetition rent from the collateral of the secured lender, Ford Motor Credit Company ("Ford Credit"), pursuant to § 506(c). Following a two-day hearing on the merits, we granted Loudoun's motion to collect the rent from Ford Credit's collateral.

Subsequently, in a related bankruptcy case, the Court of Appeals for the Fourth Circuit held that only a trustee, not an administrative creditor such as Loudoun, may surcharge a secured lender under § 506(c). *See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481 (4th Cir.1994). Ford Credit has asked us to vacate our initial ruling in light of the Fourth Circuit decision. In response, Loudoun has joined the Chapter 7 trustee as a § 506(c) claimant. For the reasons that follow, we substitute the Chapter 7 trustee for Loudoun, and accordingly drop Loudoun as a § 506(c) claimant in this matter. In all other respects, we deny Ford Credit's motion to set aside our order.

## I.

The debtor, K & L Lakeland, Inc., was among several automobile dealerships located in Northern Virginia, which were controlled by John W. Koons, Jr. The debtor's business operated on a six-acre parcel of land that was owned by Loudoun, a partnership comprising of both Koons and another individual named Ralph G. Louk. Louk held bare legal title to the land as trustee for Loudoun. In October 1989, the debtor and Louk entered into a lease agreement in which the debtor promised to pay $50,000 per month to rent the premises involved here. The debtor then subleased a small portion of the premises to another Koons dealership known as Saturn of Sterling.

Ford Credit provided the debtor with floorplan financing in March 1991, and in exchange, took back first-priority security interests in virtually all the debtor's assets, including its motor-vehicle inventory, parts inventory, accounts receivable, furniture, fixtures, equipment, contract rights, general intangibles, and the products and proceeds of all the foregoing. Several months later, on October 22, 1991, the debtor filed for bankruptcy under Chapter 11. Because Ford Credit's liens encumbered nearly all the debtor's assets, the debtor sought permission to use Ford Credit's cash collateral to continue operating its business. During the course of this Chapter 11 case, Ford Credit and the debtor entered into three consent orders that authorized and regulated the debtor's use of cash collateral. In addition, Ford Credit supplied the debtor with postpetition financing, and in exchange, took back blanket liens encumbering both the assets and income that the debtor acquired postpetition.

Although the debtor continued to operate its business postpetition, it paid no rent to either Loudoun or Louk. In addition, the debtor took no steps to assume the lease agreement between itself and Louk, and eventually, the period fixed for assuming or rejecting the lease expired. The lease was therefore rejected by operation of 11 U.S.C. § 365(d)(4). Although § 365(d)(4) instructs a debtor-in-possession to surrender the leasehold premises upon rejection of the lease, the debtor in this instance continued to use Loudoun's property without paying rent. Neither Loudoun nor Louk initiated any action in this Court to take possession of the leasehold premises.

In March 1992, Loudoun sought the allowance of an administrative claim for the postpetition rent not paid by the debtor. Since virtually all the debtor's assets were subject to Ford Credit's liens, Loudoun moved for permission to collect the rent from Ford Credit's collateral, pursuant to 11 U.S.C. § 506(c). Shortly thereafter, for reasons not relevant here, the debtor's attempted reorganization failed. On April 7, 1992, the debtor ceased all business operations, and closed its doors for the last time. Ford Credit then obtained relief from the stay, and started liquidating the debtor's assets. A few months later, in July 1992, the debtor's case was converted to Chapter 7, and a trustee was appointed to administer the estate.

In the meantime, another Koons dealership, JKJ Chevrolet, Inc., had filed for bankruptcy, and a creditor involved in that case, Reynolds & Reynolds Company ("Reynolds"), was pursuing its own § 506(c) action against Ford Credit. For purposes of judicial economy, we heard the respective motions of Loudoun and Reynolds in one consolidated trial, which lasted for two days in August 1992. At the outset of trial, we heard argument as to whether § 506(c) granted a cause of action to administrative creditors. Ford Credit asserted that, even if Loudoun

and Reynolds were administrative claimants, they still could not recover against Ford Credit, for § 506(c) mentioned only the "trustee" and therefore only trustees had the ability to recover. Consistent with all the courts of appeals that had addressed the issue thus far,[1] we concluded that § 506(c) was a cause of action available to both trustees and administrative creditors.

After we made this decision, the Chapter 7 trustee responsible for the K & L Lakeland bankruptcy asked to be excused from attending the balance of the hearings. The trustee conceded that Loudoun had a valid administrative-expense claim based on the non-payment of rent. See Tr. of Aug. 14, at 28, 48. Inasmuch as Loudoun could proceed on its own under § 506(c), the trustee determined that he had no further interest in these proceedings. Upon this representation, we told the trustee that he could leave the hearing "at [his own] peril." Tr. of Aug. 14, at 48. The trustee then withdrew his appearance, and took no part in the evidentiary hearing that followed. After receiving the evidence, we granted Loudoun's request for an administrative-expense claim in the amount of $166,079, and we determined that Loudoun could surcharge Ford Credit under § 506(c) to recover this amount. We also granted an administrative-expense claim to Reynolds, and decided that it too could surcharge Ford Credit to satisfy its claim. Thereafter, Ford Credit moved to alter or amend the judgment entered in favor of Loudoun, and it also appealed the decision granting relief to Reynolds.

As to the appeal involving Reynolds, the district court reversed our decision, holding that the plain terms of § 506(c) granted only trustees—not administrative creditors—a right of action against a secured creditor's collateral. See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 158 B.R. 614 (E.D.Va.1993). Reynolds then appealed to the Court of Appeals for the Fourth Circuit. Affirming the judgment of the district court, the court of appeals likewise determined that § 506(c) mentioned only the "trustee," and thus held that only trustees had a cause of action available under the statute. See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481 (4th Cir.1994).

Upon the joint request of Loudoun and Ford Credit, we postponed the hearing on Ford Credit's motion to alter or amend, pending the outcome of the appeals involving Reynolds. After the court of appeals issued its decision in JKJ Chevrolet, Loudoun moved to join the Chapter 7 trustee as a § 506(c) claimant. We granted Loudoun's motion in December 1994. We also granted Ford Credit's request to reopen the record, and thereafter the three parties (Ford Credit, Loudoun, and the Chapter 7 trustee) introduced a stipulation of facts, together with supporting documents. Subsequently, a hearing was held on Ford Credit's motion to alter or amend, at which time we took the matter under advisement.

## II.

"Generally, administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 483 (4th Cir.1994) (footnote omitted). An exception to this general rule is set forth in § 506(c), which provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). "[Section 506(c) ] is equitable in origin, preventing a windfall to a secured creditor at the expense of the trustee or debtor in possession by shifting the costs of preserving or disposing of a secured party's collateral from the bankruptcy estate to the secured party." United States v.

---

1. See North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir.1991), cert. denied, —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); In re Parque Forestal, Inc., 949 F.2d 504, 511 (1st Cir.1991); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.), 924 F.2d 74, 77 (5th Cir.1991); Equitable Gas Co. v. Equibank, N.A. (In re McKeesport Steel Castings Co.), 799 F.2d 91, 94 (3d Cir.1986).

*Boatmen's First Nat'l Bank,* 5 F.3d 1157, 1159 (8th Cir.1993). As mentioned before, we determined that Loudoun could surcharge Ford Credit under § 506(c) to recover the unpaid, postpetition rent. Ford Credit has filed a motion to alter or amend the judgment, asking us to reconsider our ruling.

The Court of Appeals for the Fourth Circuit has recognized three grounds for altering or amending a prior judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). On reconsideration, Ford Credit raises two issues. The first concerns whether Loudoun may continue to proceed as a § 506(c) claimant, in light of the decision rendered in *JKJ Chevrolet.* The second issue is whether the bankruptcy estate incurred "costs and expenses," as specified in the statute, when neither the debtor nor the trustee paid any rent in the first place. We address each of these questions *seriatim.*

### A.

■ As related above, the Court of Appeals for the Fourth Circuit held in *JKJ Chevrolet* that § 506(c) does not extend a cause of action to administrative claimants such as Loudoun. *See JKJ Chevrolet, Inc.,* 26 F.3d at 486. Rather, only a trustee or a debtor-in-possession may pursue an action under § 506(c) to surcharge a secured lender. *Id.* at 484. In *JKJ Chevrolet,* the court of appeals emphasized that, when a recovery is made under § 506(c), "the recovered funds become available as an unencumbered asset for distribution to the unsecured creditors." *Id.* The court of appeals also observed that

> [a]llowing [an administrative] claimant to proceed directly against a secured creditor would circumvent [the bankruptcy] distribution scheme, potentially causing an inequitable division of the estate. For example, if an estate has no unencumbered assets, an administrative claimant recovering directly from a secured creditor might receive full reimbursement while other administrative claimants, whose services were also necessary to the preservation of

the estate, would receive nothing. An administrative claimant proceeding against a secured creditor in effect would be granted priority over the other claimants in its same class. We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly.

*Id.* (citations and footnotes omitted).

■ Loudoun suggests that it has followed the mandate of *JKJ Chevrolet* by joining the Chapter 7 trustee as a co-claimant in this matter. Yet a joint recovery obtained by Loudoun and the trustee would enable Loudoun to receive funds outside the priority distribution scheme, which is a result contrary to the express provisions of the Bankruptcy Code, as noted above. As indicated in *JKJ Chevrolet,* Loudoun must stand in line with the other unsecured creditors to receive any *pro rata* distribution the estate may eventually make. Based on the holding of *JKJ Chevrolet,* which represents "an intervening change in controlling law," we conclude that Loudoun can no longer proceed directly against Ford Credit. We therefore substitute the Chapter 7 trustee for Loudoun, and accordingly drop Loudoun as a § 506(c) claimant. *See* Fed.R.Civ.P. 21 (allowing a court to add or drop parties *sua sponte* "at any stage of the action and on such terms as are just"), *incorporated in* Fed.R.Bankr.P. 7021 & 9014; *see also Mathis v. Bess,* 761 F.Supp. 1023, 1026 (S.D.N.Y.) ("Although [Fed.R.Civ.P.] 25 provides for substitution of parties in limited circumstances, parties may be substituted under Rule 21 in the discretion of the court in situations not covered by Rule 25."), *modified on other grounds,* 763 F.Supp. 58 (S.D.N.Y.), *and modified on other grounds,* 767 F.Supp. 558 (S.D.N.Y.1991); *Persaud v. Exxon Corp.,* 867 F.Supp. 128, 136 (E.D.N.Y. 1994) (same).

Although substitution has "the same effect as if the action had been commenced in the name of the real party in interest," Fed. R.Civ.P. 17(a), *incorporated in* Fed. R.Bankr.P. 7017, we do not believe that substitution in this instance nullifies Loudoun's administrative-expense claim, since the trust-

ee conceded at trial that Loudoun had such a claim based on the non-payment of rent. *See* Tr. of Aug. 14, at 28, 48. Thus, the principal question confronting us is not whether Loudoun has a valid administrative-expense claim against the estate, but whether the trustee may use property encumbered by Ford Credit's liens to pay a dividend on the unsecured claims, including the administrative-expense claim held by Loudoun. Even if Loudoun is not an administrative claimant, it still has, at the very least, a general unsecured claim against the estate, and the estate is therefore liable for the unpaid, postpetition rent. The foregoing has relevance to the next argument raised by Ford Credit.

### B.

Ford Credit points out that the debtor made no rental payments during the Chapter 11 phase of this case. It therefore asserts that it could not have received a benefit or windfall, since no costs and expenses were incurred to cover the rental obligations. Stated another way, since the estate is not out-of-pocket with respect to rent, there are no "costs and expenses" recoverable under the statute. In support of its argument, Ford Credit relies on three appellate decisions, which express that a § 506(c) claimant must prove "in quantifiable terms that it expended funds directly to protect and preserve the collateral." *United Jersey Bank v. Miller (In re C.S. Assocs.),* 29 F.3d 903, 906 (3d Cir.1994); *Treasurer of Snohomish County v. Seattle–First Nat'l Bank (In re Glasply Marine Indus., Inc.),* 971 F.2d 391, 394 (9th Cir.1992); *Central Bank v. Cascade Hydraulics & Util. Serv., Inc. (In re Cascade Hydraulics & Util. Serv., Inc.),* 815 F.2d 546, 548 (9th Cir.1987).

■ "The task of resolving the dispute over the meaning of [§ 506(c) ] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "If the language is plain and 'the statutory scheme is coherent and consistent,' there is no need to inquire further." *JKJ Chevrolet,*

*Inc.,* 26 F.3d at 483 (quoting *Ron Pair Enters., Inc.,* 489 U.S. at 240, 109 S.Ct. at 1030). "[T]he sole function of the courts is to enforce [the statute] according to its terms." *Id.* (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). The courts may deviate from the strict language of the statute only when "there is a clearly expressed legislative intent to the contrary," or when a literal application of the statute would either "thwart its obvious purpose" or "produce an absurd result." *JKJ Chevrolet, Inc.,* 26 F.3d at 483–84. At first blush, the terms "costs and expenses" certainly suggest that Ford Credit's narrow interpretation is correct, *viz.,* that cash must be spent before the estate may reimburse itself under § 506(c).

■ Nevertheless, the problem with Ford Credit's approach is that it ignores the fact that the estate is "out-of-pocket" to the extent it remains liable for the unpaid rent. In this instance, the non-payment of rent represents an unsecured, postpetition loan from the landlord. *See United States v. Boatmen's First Nat'l Bank,* 5 F.3d 1157, 1160 (8th Cir.1993); *cf. also Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 867–68 n. 7 (4th Cir.1994) (suggesting that postpetition credit is encompassed within the terms "costs and expenses" under a comparable bankruptcy provision, 11 U.S.C. § 503(b)(1)(A)). Also, consistent with the decisions cited by Ford Credit, this "loan" is *quantifiable* insofar as we fixed the amount of Loudoun's claim at $166,079.

Additionally, the narrow interpretation urged by Ford Credit is problematic, for it would ignore situations in which the estate relies on credit to cover the costs of preserving or disposing of the secured party's collateral. In other words, secured creditors could elude § 506(c) claims, and thus receive a windfall, simply because the estate decided to use credit instead of cash. Such an outcome is absurd and would thwart the statute's obvious purpose. Accordingly, we hold that the unpaid, postpetition rent falls within the realm of "costs and expenses" that are recoverable under § 506(c).[2]

---

**2.** Another decision cited by Ford Credit, *In re Air*  *Center, Inc.,* 48 B.R. 693 (Bankr.W.D.Okla.1985)

### III.

For the foregoing reasons, we grant Ford Credit's motion to alter or amend the judgment only insofar as we substitute the Chapter 7 trustee for Loudoun. In all other respects, Ford Credit's motion is denied. An appropriate order will be entered.

---

is inapposite, for the costs and expenses at issue there arose *post-confirmation*, and thus were not chargeable to the estate. *See id.* at 694–95; *see also* 11 U.S.C. § 1141(b) (indicating that the estate ceases to exist upon plan confirmation). To the extent another decision cited by Ford Credit, *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y.1982), supports the view that "costs and expenses" mean actual cash spent, we find it unpersuasive for the reasons set forth above.