**In re COMPUTER SYSTEMS, Debtor.**

No. 09–20802.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 15, 2011.

Jeffrey Baddeley, Ulmer & Berne LLP, Cleveland, OH, Rocco I. Debitetto c/o Hahn Loeser + Parks LLP, Cleveland, OH, Christopher W. Peer, Hahn Loeser and Parks LLP, Cleveland, OH, for Brown Gibbons Lang&Co. Securities Inc.

Emly B. Berndt, U.S. Attorney's Office, Carl B. Stokes, Cleveland, OH, for U.S. I.R.S.

David D. Black, Daniel C. Wolters, Cavitch Familo Durkin & Frutkin, Stuart A. Laven, Cleveland, OH, for Huntington Bank, N.A.

Shawn M. Christianson, Buchalter Nemer, San Francisco, CA, for Oracle America, Inc.

David M. Douglass, Cleveland, OH, for JM Green Group, CPA.

Ronald E. Gold, Frost Brown Todd LLC, Cincinnati, OH, for Official Committee of Unsecured Creditors, Frost Brown Todd LLC.

Eric Goldstein, Shipman & Goodwin LLP, Hartford, CT, for SW Pelham Fund, L.P.

Eric R. Goodman, Cleveland, OH, for University Hospitals.

Suzana Krstevski Koch, Brouse McDowell, LPA, Akron, OH, Susan P. Taylor, Brouse & McDowell, Cleveland, OH, Jessica E. Price, Cleveland, OH, for Dev. Capital Ventures, LP.

Stuart L. Larsen, Day Ketterer Ltd., Hudson, OH, for The Timken Co.

Bruce J.L. Lowe, Cleveland, OH, for Computer Systems Co., Inc. d/b/a The CSC Group, Howard Wershbale.

Marc A. Melamed, Cleveland, OH, for Ohio Dept. of Job & Family Services, State Of Ohio Dept. of Taxation.

Erin B. Moore, Green & Green, Dayton, OH, for Genesee County Div. of Water and Waste Services.

Victoria A. Reardon, Dept. of Attorney General, Detroit, MI, for State of Michigan, Dept. of Treasury.

Nikolaus F. Schandlbauer, Ober Kaler Grimes & Shriver, Washington, DC, for U.S. Small Business Admin.

Courtni E. Thorpe, Baker & Hostetler LLP, Cleveland, OH, for Fifth Third Bank.

Dean Wyman, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Before the Court is the Application of Brown Gibbons Lang & Company for Allowance of Compensation and Reimbursement of Expenses Pursuant to §§ 330 and 503(b)(2). Huntington National Bank filed a limited objection to the Application. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B) with jurisdiction further conferred by 28 U.S.C. § 1334 and General Order No. 84 of this District. After considering the Application, Huntington's Limited Objection, the Supplements filed by the parties thereto, and conducting a hearing on the matter,

the Court issues the following findings of fact and conclusions of law:

\*

Brown Gibbons served as the Debtors' investment banker and financial advisor. The Debtors filed an application seeking retention of Brown Gibbons on March 30, 2010. Attached to the application is the engagement letter signed by William Zimmerman on behalf of the Debtors and Michael Gibbons, Senior Managing Director of Brown Gibbons, on behalf of Brown Gibbons. This Court approved the Retention Application on April 22, 2010, effective nunc pro tunc to the date of the Application. There were no objections filed to the retention.

Debtors' schedules reflect that Huntington National Bank is a secured creditor with a claim in the amount of $13,700,000.00. Debtors' schedules also show that the Internal Revenue Service is a secured creditor with a claim in the amount of $1,825,363.00. Debtor scheduled the value of its assets at $33,333,104.79.

On August 31, 2010, this Court approved the sale of substantially all of the Debtors' assets to Hyland Software, Inc. in the amount of $3.15 million in cash plus the assumption of $154,900 in liabilities. This Court's Sale Order states, in pertinent part:

> 26. ... The cash proceeds of the Sale are the fully encumbered and duly perfected cash collateral of the Internal Revenue Service ("IRS") and Huntington, and are insufficient to satisfy the aggregate senior secured claims of IRS and Huntington. From the proceeds deposited in the Sale Proceeds Account (I) an amount shall be reserved sufficient to cover the payment of any cure costs related to the Assumed contracts ... and (ii) a sum equal to the aggregate amount of applicable line-item carve-outs in orders of the Court authorizing the Debtors' use of cash collateral shall be reserved to pay professionals employed under Bankruptcy Code section 327.

Sale Order at 19–20. Only the Official Committee of Unsecured Creditors objected to the Sale Motion. The Committee sought additional time to identify a buyer willing to pay a higher price for the Debtors' assets. The objection was overruled and no appeal of the Sale Order was taken by any party.

This Court's July 19, 2010 Amended Agreed Final Order (I) Authorizing Use of Cash Collateral and (ii) Granting Adequate Protection stated the following with respect to a carve out for professional fees:

> 17. Subject to further orders of the Court upon interim and final fee applications under Bankruptcy Code sections 330 and 331, the Debtors are authorized to use cash collateral to compensate retained professional persons pursuant to any duly-executed order of the Bankruptcy Court up to the line item maximums as set forth in the Budget through the termination of the Debtors' authority to use cash collateral under this Amended Final Order.

Agreed Final Order at 10. The Budget provided for $160,000 in payment of restructuring fees, as well as fees in the amount of $335,000 for Debtors' legal fees and $390,000 for professional fees of the Creditors' Committee.

\* \*

Brown Gibbons seeks payment of a $500,000 Transaction Fee and $5,756.78 in fees in connection with services rendered to the Debtors with respect to the sale of

the Debtors' assets. Consistent with the Retention Order, Brown Gibbons has been paid $125,000 in interim monthly retainer fees plus $5,541.65 in expenses to date. In its Fee Application, Brown Gibbons requested that the Debtor pay the remaining balance. In its subsequent reply papers, Brown Gibbons alleges that Huntington National Bank is responsible for paying the $375,000 remaining of the Transaction Fee and the remaining $215.13 in fees.

Huntington objects to the Application to the extent that Brown Gibbons requests it to pay the remaining balance of the Transaction Fee. Huntington alleges that it agreed, pursuant to the Final Agreed Order on Cash Collateral, to a carve out of only $160,000, not $500,000. Huntington does not object to approval of the Fee Application, per se, but only to this Court requiring it to pay the full amount of the Transaction Fee.

In response, Brown Gibbons alleges that Huntington is bound by this Court's Order approving its retention and, accordingly, must pay the Transaction Fee from the Sale Proceeds. Specifically, Brown Gibbons alleges that because Huntington did not object to its retention, it should now be required to pay the Transaction Fee. Brown Gibbons further alleges that it is not bound by the cash collateral orders or corresponding budgets because it was not served with notice of such orders. Finally, Brown Gibbons makes a series of equitable arguments regarding Huntington's payment of the Transaction Fee: 1) Brown Gibbons did not negotiate to assume the risk of non-payment; 2) transaction fees are routinely excluded from cash collateral budgets but still paid; and 3) an adverse ruling herein would "create seriously prejudicial law for all incentive-based transactions going forward."

\* \* \*

The dispositive issue for the Court is whether there is a legal basis, statutory or otherwise, to order Huntington National Bank to pay the Transaction Fee from the Sale Proceeds, which constitute Huntington's fully encumbered cash collateral.

\* \* \* \*

Brown Gibbons alleges that Huntington National Bank is bound by this Court's Retention Order to pay the Transaction Fee because such payment was not limited by any carve-out. Accordingly, a careful review of this Court's Retention Order is required to determine whether there is a basis for requiring Huntington to pay the Transaction Fee. *See Kendrick v. Bland,* 931 F.2d 421, 423 (6th Cir.1991) (stating that court's "interpretation of its own order is certainly entitled to great deference.")

■ Upon review of this Court's Retention Order, there is no language which supports finding Huntington is obligated beyond the amount set forth in the carve-out. In fact, Brown Gibbons fails to cite to any provision in the Retention Order regarding Huntington's liability for the Transaction Fee. Instead, Brown Gibbons relies on the Retention Agreement that is attached to the Debtor's Retention Application. The Retention Agreement is between the Debtor and Brown Gibbons, Huntington, notably, is not a signatory to the Retention Agreement. The Retention Agreement, page 4, under the paragraph "Chapter 11 Retention" states as follows:

The Company agrees that it will promptly ... file appropriate pleadings with the Bankruptcy Court seeking authority to retain BGL on the terms set forth herein. The parties further acknowledge that employment of BGL remains subject to entry of an order of the Bankruptcy Court authorizing the Company to retain and employ BGL (the

"Retention Order"). The Company agrees **to use its best efforts** to ensure that the Retention Order is satisfactory to BGL, in its sole and absolute discretion, and provides the following: (I) that terms of BGL's employment in the Chapter 11 Case are substantially similar to those set forth in this Agreement; (ii) that all amounts due to BGL pursuant to this Agreement constitute administrative expenses of the Company's chapter 11 estate, not subject to any limitations on "carve-outs" for professional fees; (iii) that BGL's employment shall be approved under sections 327(a) and 328(a) of the Bankruptcy Code, (iv) that Huntington Bank has agreed to be bound by the payment provisions specified above in connection with a Credit Bid Transaction and a Debt Sale Transaction, and (v) that BGL shall maintain time records per employee of the services that it provides pursuant to this Agreement in .5 hour increments, accompanied by a general description of matters worked upon . . .

(emphasis added).

Accordingly, the Debtor was to use its "best efforts" to include language regarding the exception to carve-out limitations in the Retention Order, but, the Retention Order contains no such language. The Retention Order does, however, include other provisions that the Debtor was to "use its best efforts" to ensure were contained in the Retention Order, such as:

2.  The Debtors are authorized to retain and employ Brown Gibbons . . . pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

3.  . . . In addition, in the event that a Debt Sale or Credit Bid Transaction, as defined in the Engagement Letter, occurs, Huntington Bank shall promptly thereafter disclose to Brown Gibbons the identity of any party that it has agreed to sell its position to in the case of a Debt Sale Transaction or, in the case of a Credit Bid Transaction, the name of the party to whom it intends to convey the Debtors' assets following the Credit Bid.

4.  Brown Gibbons shall maintain time records per employee of the services that it provides pursuant to the Engagement Letter in increments of .5, accompanied by general descriptions of the matters worked upon . . .

With respect to payment to Brown Gibbons, the Retention Order says only the following:

3.  Brown Gibbons shall be compensated for its services and reimbursed for any related expenses in accordance with the terms of the Engagement Letter and sections 327(a) and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable orders or procedures of this Court. Specifically, the Transaction Fee shall be payable at the time and in the manner set forth in the Engagement Letter and shall not thereafter be subject to challenge except under the standard of review set forth in sections 327(a) and 328(a) of the Bankruptcy Code.

(Retention Order at pg. 3, paragraph 3).

The time and manner of payment of the Transaction Fee were addressed in the Retention Agreement, but with no reference to Huntington Bank compensating Brown Gibbons. In fact, in both the Retention Agreement and Affidavit in Support of Retention Application, it is only the Debtor that is responsible for payment of such fee. *See* Retention Agreement at pg. 2, ¶ B ("upon the closing of either a Sale Transaction or a Reorganization Transaction, the Company shall pay BGL one of

the applicable fees (the "Transaction Fee") as set forth below: Upon the closing of a Sale Transaction, the Company shall pay BGL a Transaction Fee."); Retention Agreement at pg. 3, ("Upon confirmation of a plan of reorganization in the Chapter 11 Case ... the Company shall pay BGL a Transaction Fee"); Affidavit in Support of Retention, pg. 6, ¶ 13 ("The Debtors have also agreed to pay Brown Gibbons a Transaction Fee."); Affidavit in Support of Retention, pg. 6, ¶ 14 ("Upon the closing of a Sale Transaction, the Debtors shall pay Brown Gibbons a Transaction Fee.")

It is clear that the Debtor's "best efforts" did not result in the Retention Order including the exemption from carve-outs that Brown Gibbons now relies on as its basis for payment by Huntington. The Retention Order states that, to the extent there is any conflict between the Retention Agreement and the Retention Order, the Order controls. It is also noted that where specific action from Huntington was sought pursuant to the Retention Agreement, such was included in the Retention Order. (*See* Retention Agreement pg. 4 and Retention Order paragraph 3 regarding Huntington's obligations to Brown Gibbons in the event of a Credit Bid or Debt Sale transaction.) Because there is nothing in the Retention Order regarding Huntington's liability for the Transaction Fee, Brown Gibbons' argument that the Retention Order should control over the Final Cash Collateral Order is without merit. There is no order of this Court, retention or otherwise, that supports an obligation on the part of Huntington to pay the Transaction Fee.

There is simply no reference in any pleading with this Court, or document attached in support of such pleading, that indicates Huntington would pay the Transaction Fee. Although the Transaction Fee was a condition of sale and due at closing,

this Court' Sale Order makes no reference to payment of the Transaction Fee. Instead, the Sale Order states that the Sale Proceeds are the fully encumbered cash collateral of Huntington and the IRS and that only the carve-out amounts for professional fees are to be paid from the proceeds. (Sale Order at ¶ 26). The Sale Order was not appealed by any party. Accordingly, Brown Gibbons' contention that Huntington consented to paying the Transaction Fee by failing to object to its retention is not well-premised because the Retention Application and subsequent Order do not require Huntington to pay the Transaction Fee.

To the extent that Huntington's mere knowledge of the Transaction Fee implied its consent to pay said fee, the Court notes that implied consent is a basis for surcharging a secured creditor's collateral pursuant to 11 U.S.C. § 506(c). *In re Ferncrest Court Partners, Ltd.*, 66 F.3d 778, 782 (6th Cir.1995) ("As general rule, in order to prevail on a § 506(c) claim, the claimant bears the burden of proving that the costs were reasonable, necessary, and a benefit to the secured party ... In the alternative, recovery may be had where the claimant establishes that the secured party directly or impliedly consented.") Herein, Brown Gibbons does not have standing to pursue such a claim. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (finding that 11 U.S.C. § 506(c) standing is limited to the trustee and "does not provide an administrative claimant an independent right to use the section to seek payment of its claim.")

The balance of Brown Gibbons' arguments in support of Huntington paying the Transaction Fee is equitable in nature, without citation to statutory or other authority. First, Brown Gibbons alleges that

it did not negotiate to assume the risk of non-payment. As stated above, the Retention Agreement was between the Debtor and Brown Gibbons. Huntington was not a signatory to the agreement. Brown Gibbons cites to no authority in support of its argument that, because it did not intend to bear the risk of non-payment, Huntington should now be required to pay the Transaction Fee.

Second, Brown Gibbons alleges that Transaction Fees are routinely excluded from cash collateral budgets but, nonetheless, are paid. One case referred to by Brown Gibbons, *In re Kiebier Slippery Rock LLC*, Case No. 09–19087, is assigned to this Court's docket. Therein, the real estate broker's incentive-based fees were not a line item in the budget but were still paid upon closing of the real estate transaction. It is noted, however, the Sale Order in that case specifically stated that the real estate fee was to be paid from the sale proceeds. As noted above, there was no directive in the subject Sale Order herein that ordered payment of the Transaction Fee to Brown Gibbons from the sale proceeds. Rather, the Sale Order stated that professional fees were to be paid in accordance with the carve outs.

■ Finally, Brown Gibbons argues that an adverse ruling would "create seriously prejudicial law for all incentive-based transactions going forward." Once again, Brown Gibbons cites to no authority, statutory or otherwise, that would support this Court ordering Huntington Bank to pay the Transaction Fee. As a general rule, secured claims "must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available to unsecured claimants, including those having priority (such as holders of administrative claims)." *In re Darnell*, 834 F.2d 1263, 1265 (6th Cir.1987). *See also, In re JKJ Chevrolet*, 26 F.3d 481, 483 (4th Cir.1994) ("Generally, administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than the secured collateral."); *IRS v. Boatmen's First National Bank of Kansas City*, 5 F.3d 1157, 1159 (8th Cir.1993) ("The general rule is that normal administrative expenses of the bankruptcy estate may not be charged against secured collateral but may share in the distribution of the unencumbered assets of the debtor.")

■ A statutory exception to this general rule is found in 11 U.S.C. § 506(c), which allows a Trustee to recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving, or disposing of, such property." Section 506(c) is the statutory basis for preventing a windfall to a secured creditor. *In re Foremost Manufacturing Company*, 137 F.3d 919, 923 (6th Cir.1998) (Stating that 11 U.S.C. § 506(c) "prevent(s) secured creditors from, say, getting free warehousing for their collateral at the expense of the rest of the estate.") *See also, I.R.S. v. Boatmen's*, 5 F.3d at 1159 ("Section 506(c) ... is equitable in origin, preventing a windfall to a secured creditor at the expense of the trustee or debtor in possession by shifting the costs of preserving or disposing of a secured party's collateral from the bankruptcy estate to the secured party.")

■ As stated above, Brown Gibbons is without standing to seek relief pursuant to § 506(c), and this Court is unaware of any other statutory provision that provides an exception to the general rule regarding payment of secured creditors. Brown Gibbons' assertion that an adverse ruling will create "seriously prejudicial law for all incentive-based transactions going forward" is not a legitimate basis for the relief sought. In fact, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197,

206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Herein, Brown Gibbons has cited to no Code provision, or other authority, that supports payment of the Transaction Fee train Huntington's cash collateral. Accordingly, Brown Gibbons' request to have the Transaction Fee paid from the sale proceeds is not well premised.

\* \* \* \* \*

Accordingly, Brown Gibbons Lang & Company's Application for Allowance of Compensation and Reimbursement of Expenses Pursuant to §§ 330 and 503(b)(2) is approved for compensation and expense reimbursement. Huntington National Bank is ordered to pay Brown Gibbons to the extent of funds available in the allotted Cash Collateral Order. Huntington National Bank's Limited Objection is hereby sustained.

**IT IS SO ORDERED.**