**In re SUNTASTIC USA, INC., Debtor.**

No. 00–08420–ECF–CGC.

United States Bankruptcy Court,
D. Arizona.

Sept. 17, 2001.

Daniel Collins, Leonard Collins & Kelly, P.C., Phoenix, AZ, for Trustee Robert Patrick Abele.

Robert Patrick Abele, Mesa, AZ, trustee.

Craig J. Bolton, Greenberg Traurig, LLP, Phoenix, AZ, for Citizens Communications Company.

Janet Napolitano, Attorney General, Deborah L. Bryant, Assistant Attorney General, Phoenix, AZ, for Arizona Department of Revenue.

Richard M. Lorenzen, Brown & Bain, PA, Phoenix, AZ, Michael Harper, LLP, Faegre & Benson, LLP, Minneapolis, MN, for Rabobank Nederland.

D. Lamar Hawkins, Hebert Schenk, P.C., Phoenix, AZ, D. Rand Henderson, Mortensen & Henderson, P.C., Snowflake, AZ, Bernard C. Porter, Porter Law Center, Chartered, Mesa, AZ, for debtor.

G. Terris Porter, Porter Law Offices, PC, Show Low, AZ, for Baldwin, Jones & Co., LLP.

## UNDER ADVISEMENT DECISION RE: MOTIONS FOR ALLOWANCE OF SURCHARGE PURSUANT TO 11 U.S.C. § 506(c)

CHARLES G. CASE, II, Bankruptcy Judge.

### I. Introduction

Several administrative claimants have filed motions seeking (1) standing to pursue surcharges pursuant to 11 U.S.C. section 506(c) against the collateral of secured creditor Cooperative Centrale Raiffeisen–Boerenleen Bank, B.A. ("Rabobank") or (2) an order requiring the trustee to do so on their behalf.[1] These claimants include various counsel for the debtor, Hebert Schenk P.C. and Baldwin, Jones & Co., and two "involuntary" administrative claimants, Citizens Communications Company ("Citizens"), which was required to provide natural gas service under applicable law and tariffs for which it was not paid, and the Arizona Department of Revenue ("ADOR"), which has not been paid required state withholding taxes on wages of employees who worked post-petition. All of the claimants assert that they have provided a specific benefit to Rabobank sufficient to justify a surcharge. There is approximately $250,000 in post-petition cash collateral available for these purposes; the administrative claims asserted exceed $400,000.

### II. Issues presented

The following issues are presented:

1. May a creditor seek a surcharge under section 506(c) where the trustee has refused to do so on the creditor's behalf?

2. If not, what is the trustee's duty where a creditor has demanded that a surcharge motion be prosecuted by the trustee on that creditor's behalf?

### III. Discussion

11 U.S.C. section 506(c) provides that

[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

■ This Court is initially bound by the United States Supreme Court's decision in *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). The issue in *Hartford* was whether an administrative claimant of a bankruptcy estate could seek payment of its claim from property encumbered by a secured creditor's lien pursuant to section 506(c). The secured creditor was debtor's primary lender and was secured by essentially all of debtor's real and personal property. Post-petition, the primary lender agreed to lend debtor an additional $300,000 to help finance the reorganization. Debtor used the loan to pay expenses, including worker's compensation expenses.

The worker's compensation insurance was provided by Hartford Underwriters, who was unaware of the bankruptcy proceedings. Debtor failed to make the monthly insurance premium payments, but Hartford continued to provide insurance nonetheless. When reorganization ultimately failed, the case was converted to Chapter 7 and a trustee was appointed. At this time, the debtor owed Hartford

1. The administrative claimants also assert that they should be paid out of Rabobank's cash collateral because Rabobank has consented to such use under various cash collateral orders. These claims present factually intensive inquiries that cannot be resolved by the this Order but rather will be set for further evidentiary proceedings.

$50,000 in premiums. When Hartford learned that the estate lacked unencumbered funds from which to pay Hartford, Hartford sought to surcharge the secured lender for the unpaid premiums pursuant to section 506(c).

Section 506(c) is an exception to the rule that secured claims are superior to administrative claims; it provides that reasonable and necessary amounts expended by a party in order to preserve or dispose of estate property may be paid out of a secured party's collateral where such expenses benefitted the holder of the secured claim. The question was whether Hartford had standing to seek the surcharge or whether it could only be sought by the trustee. Beginning its analysis with the language of section 506(c) that specifically referred to "the trustee," and no other party, the Court concluded that the express language was controlling, notwithstanding the lack of a specific prohibition against other parties bringing such a claim. The Court concluded that it was certainly plausible, given the trustee's unique role in the bankruptcy proceedings, that Congress intended only the trustee to pursue surcharges.

The Court also rejected Hartford's argument that policy urges the conclusion that others may bring surcharge proceedings because in some situations the trustee may lack an incentive to pursue payment. The Court responded that such situations would be "limited by the fact that the trustee is obliged to seek recovery under the section whenever his fiduciary duties so require." 530 U.S. at 12, 120 S.Ct. at 1950. The Court further noted that the failure of the trustee to pursue the surcharge would not leave the party who had provided the goods or services without other means to protect themselves against other creditors. The Court suggested that the party could insist on cash payment, or contract directly with the secured creditor

to obtain superpriority status or a security interest.

The Court expressly left undecided the question of whether a court could grant a party other than the trustee permission to pursue a surcharge where the trustee refused to do so because Hartford never asked the trustee to pursue payment under section 506(c) and did not seek permission from the Bankruptcy court to pursue the matter itself.

The Court is further bound by the Ninth Circuit's opinion in *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061 (9th Cir.2001). There, the debtor and secured creditor Resort Funding, Inc. ("RFI") entered into a settlement agreement that provided for a $50,000 payment from RFI to debtor's counsel pursuant to section 506(c). The Ninth Circuit found the settlement agreement valid and enforceable against a challenge by Calstar Corporation that the agreement impermissibly abrogated its right to surcharge the secured collateral of RFI.

The settlement arose when Calstar gained the right to purchase the debtor hotel. It agreed to lend debtor $150,000 to keep the hotel open while Calstar completed its due diligence prior to closing. This postpetition financing was approved on a super-priority basis, giving Calstar the right to repayment ahead of all administrative and unsecured claims (but didn't change the right of the secured creditors). Subsequently, Calstar withdrew from the sale. The court then held a public auction to sell the property.

After the sale, debtor's counsel sought a $50,000 payment out of RFI's secured collateral under section 506(c). RFI agreed, although it never conceded that debtor's counsel had provided any measurable benefit to its secured collateral. The agreement contained a provision barring any

other party in the proceedings from seeking to surcharge RFI's collateral under section 506(c). Calstar objected because it wanted to surcharge the secured collateral itself for repayment of the $150,000 it advanced debtor and which it claimed benefitted RFI.

Two issues faced the court: (1) whether Calstar had standing to object to the secured creditor's settlement agreement with the debtor in possession; and (2) how should the $50,000 in proceeds from the surcharge be distributed. On the first issue, the court concluded that Calstar had no standing under the analysis of *Hartford Underwriters* and therefore the immunizing language in the settlement agreement had no legal effect. The court noted that *Hartford* overruled prior 9th Circuit law (*In re Palomar Truck Corp.*, 951 F.2d 229 (9th Cir.1991)) allowing parties other than the trustee to seek a surcharge under section 506(c) when the trustee "has no economic incentive to seek recovery under § 506(c)." Neither the court in *Debbie Reynolds* nor in *Palomar* determined whether a party other than the trustee may seek a surcharge after the trustee has refused to pursue such a surcharge, although the court's analysis in *Palomar* suggests that it is not necessary.[2]

Nevertheless, at bottom, *Debbie Reynolds* establishes that, in the Ninth Circuit, even where the trustee has no economic incentive to pursue recovery under 506(c), nobody else may pursue surcharge—period.

■ This conclusion does not fully answer the next question, however: on what grounds may the trustee refuse to pursue

a surcharge? The trustee unquestionably has obligations to the estate and the creditors to pursue various claims and matters. *See Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir.1992) (Chapter 7 trustees are "charged with the fiduciary duty to administer the chapter 7 estate expeditiously in the best interests of the estate"); *Martin–Trigona v. Ferrari (In re WHET, Inc.)*, 750 F.2d 149, 149 (1st Cir.1984) (trustees "owe[ ] a fiduciary duty to debtor and creditors alike to act fairly and protect their interests"). And, of course, the Supreme Court in *Hartford* told us that the trustee had some duties in this regard. Not surprisingly, case law on this point is scant.

The Fourth Circuit in *In re JKJ Chevrolet, Inc.*, 26 F.3d 481 (4th Cir.1994), briefly addressed the issue of a trustee's duty with respect to section 506(c).[3] In responding to the argument that a trustee may not have an incentive to pursue a surcharge on behalf of some creditors, the court noted that the trustee owes a fiduciary duty to the creditors of the estate:

A failure to seek recovery of a qualifying claim under § 506(c) may constitute a breach of those duties. In addition, trustees are administrative claimants who are paid from the funds of the estate. If there are insufficient funds in the estate to pay all of the allowed administrative expenses, the trustee will not be paid in full, but will be required to share the funds of the estate on a pro rata basis with the other administrative claimants. Thus, not only does a trustee usually have a strong incentive to pursue § 506(c) claims, but both the trustee and

2. Of course, in *Palomar*, the Court held that where there is no incentive for the trustee to pursue a surcharge on the request of a third party, the third party could bring the surcharge proceeding itself. Thus, it was unnecessary to reach the issue.

3. *JKJ* has not been overruled and appears consistent with the Supreme Court's subsequent decision in *Hartford*. The Fourth Circuit held that a section 506(c) surcharge may only be sought by the trustee based on the unambiguous language of the Code.

debtor in possession have a fiduciary duty to pursue viable § 506(c) claims that would benefit the estate.

26 F.3d at 485. The court went on to state that if a trustee refuses to pursue the 506(c) surcharge, the third party could seek a court order requiring the trustee to do so, request the court remove the trustee, or, if the debtor in possession is in control of the estate, request the appointment of a trustee. Again, the court refused to consider whether it could grant derivative standing to the third party in order to pursue the surcharge because in this case there had been no argument that the previously mentioned avenues of relief would not prevent a windfall to the secured creditors.

■■■ The touchstone of a trustee's duty is to act in the best interests of all creditors. Thus, this Court concludes that the test of whether a trustee may refuse to pursue a section 506(c) claim after request by an administrative claimant is whether doing so may conceivably benefit the estate, without regard to whether the action will benefit the requesting claimant. A typical scenario would be where there are potentially legitimate surcharge claims, payment of which from the secured party's collateral would increase the pool of unencumbered assets remaining to pay other administrative, or even unsecured claims, that do not have a legitimate basis upon which to seek a surcharge. These circumstances could include surcharge claims by the trustee himself or surcharge claims brought on behalf of others. In either event, the net result would be an increase in the pro rata distribution available to other creditors—clearly a benefit to the estate.

Unfortunately for these claimants, these are not the undisputed facts in this case. Here, there are no unencumbered funds. The only basis for payment of these claimants, other than consent, is whether they can individually establish entitlement to a surcharge. Whether they do or not has no impact on the estate as a whole, or on other creditors; the only impact is individual. This Court concludes that it is not part of a trustee's mandatory exercise of his fiduciary obligations to take actions the end result of which only benefit an individual creditor or claimant. As a result, his refusal to prosecute the claims is not open to challenge under governing law. Therefore, it is not necessary to hold further proceedings in this case to test the trustee's refusal to proceed.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the administrative claimants here, other than the trustee, lack standing to pursue a surcharge against Rabobank under 11 U.S.C. section 506(c). In addition, where pursuing the requested surcharges here would not benefit the estate as a whole, but only the individual administrative claimants, the trustee cannot be forced to pursue the surcharges himself.

However, the issue of whether Rabobank consented to the use of its cash collateral as to one, some, or all of these claimants is a factually intensive question that must be decided individually as to each claim. For that purpose, a **Rule 16(b) scheduling conference will be held on October 25, 2001, at 3:30 p.m.** in Courtroom 6 of the United States Bankruptcy Court, 2929 N. Central Ave., Phoenix, Arizona. Parties are to comply with Federal Rules of Civil Procedure 26(a) and 26(f) prior to that conference and shall be prepared to discuss setting the matters for final disposition.

So ordered.