In re SMITH INTERNATIONAL
ENTERPRISES, INC.,
Debtor.

No. 6:02–bk–04459–KSJ.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 23, 2005.

Peter N. Hill, Wolff Hill McFarlin & Herron PA, Orlando, FL, for Debtor.

*MEMORANDUM OPINION DENYING SONEET KAPILA'S MOTION TO COMPEL TRUSTEE TO FILE A MOTION TO SURCHARGE MERRILL LYNCH FINANCIAL SERVICES, INC.*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on November 15, 2004, on the Motion to Compel Trustee to File a Motion to Surcharge Merrill Lynch Financial Services, Inc. ("the Motion") filed by the Chapter 11 examiner, Soneet R. Kapila ("Kapila"), and his accounting firm, Kapila & Company (Doc. No. 213). In the Motion, Kapila asks the court to compel the Chapter 7 trustee, James C. Orr, to surcharge collateral of the primary secured creditor of the debtor, Merrill Lynch Financial Services, Inc., pursuant to Section 506 of the Bankruptcy Code.[1] Alternatively, Kapila seeks an order allowing him to seek a surcharge in the trustee's stead. Merrill Lynch filed an Objection (Doc. No. 216), and the trustee filed a Response (Doc. No. 217) opposing the Motion. Upon consideration of the evidence, pleadings, the arguments of the parties, and the law, the Motion is denied for the reasons explained below.

On April 30, 2002, the debtor, Smith International Enterprises, Inc., filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. The debtor was in the business of producing and selling encrypted plastic cards used for such things as credit cards and hotel keys. Merrill Lynch was the primary secured creditor of the debtor. On the date of the bankruptcy filing, the debtor owed Merrill Lynch approximately $1.7 million under two cross-collateralized loans. Merrill Lynch held a

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

blanket lien encumbering all of the debtor's assets.

Shortly after the bankruptcy filing, on May 23, 2002, Merrill Lynch filed an Emergency Motion to Appoint a Trustee (Doc. No. 20) alleging improprieties by the principal operating the debtor and irregularities in the debtor's financial practices. What Merrill Lynch most desired was to appoint their own financial advisor as the Chapter 11 trustee. If appointed, the cost of the financial advisor would be borne by the bankruptcy estate, not Merrill Lynch.

However, due to the possible conflict of interest arising if the financial advisor working for Merrill Lynch were retained and finding no need for the appointment of a Chapter 11 trustee, the Court granted Merrill Lynch's motion to a limited extent—an examiner not affiliated with Merrill Lynch was to be appointed. Soneet Kapila was selected for the position, and the order appointing him as examiner was entered on June 18, 2002 (Doc. No. 46). He, with the help of his accounting firm,[2] promptly began the work culminating in the report he filed shortly thereafter on July 11, 2002 (Doc. No. 69).

Kapila worked hard to unravel the financial complexities and alleged irregularities of the debtor's operations, and his services certainly provided assistance to the Court. As the case developed, however, it became apparent that Merrill Lynch's claims were largely unfounded. Kapila eventually concluded that the debtor had few valuable assets and no potential to reorganize. The hidden assets alleged by Merrill Lynch simply did not exist.

Therefore, largely due to Kapila's efforts, the case was converted to a Chapter 7 liquidation case on August 26, 2002.

James C. Orr was appointed as the Chapter 7 trustee and has administered the case. Due to Merrill Lynch's blanket lien on all of the debtor's few assets, however, no assets were recovered for the benefit of any creditors other than Merrill Lynch. Indeed, Merrill Lynch recovered only pennies on the dollar. The estate has no funds to distribute to creditors. Thus, although Kapila completed his task superbly, he was not paid because the estate is administratively insolvent.

Kapila argues that his services benefited Merrill Lynch by preventing the further dissipation or diminishment of its collateral by the debtor's principals, who were ultimately removed from control. For this reason, Kapila asked the trustee to file a motion pursuant to Section 506(c) of the Bankruptcy Code to compel Merrill Lynch to pay the cost of his services as an examiner and for his accountants. During the pendency of his work, from June 20, 2002, through August 31, 2002, Kapila and his company incurred fees and costs in the amount of $56,762.37.

The trustee refused Kapila's request to pursue a motion to surcharge Merrill Lynch's collateral, concluding that such an action would yield no benefit to the estate (Doc. No. 217). In addition, the trustee has no money to hire a lawyer or any other professional to assist him in such litigation. The trustee consulted with the United States Trustee's Office concerning Kapila's request, and they too concurred with his analysis. Therefore, since the trustee refused to seek surcharge against Merrill Lynch, on April 28, 2004, Kapila filed the Motion asking the Court to compel the trustee to do so. Alternatively, Kapila requests an order allowing him to independently file a surcharge motion.

---

**2.** The court also appointed Kapila's accounting firm, Kapila & Company, as accountants, *nunc pro tunc* to June 20, 2002 (Doc. No. 90).

The trustee requests that the Court deny the Motion as the estate simply has no assets available to fund this or any other litigation. Certainly, the Chapter 7 case lacks sufficient funds for the trustee to pursue this surcharge claim. Merrill Lynch also objects to the Motion, noting that it received only $2,500 when it liquidated its collateral after the case converted to Chapter 7 (Doc. No. 216, paragraph 9). Moreover, Merrill Lynch believes it had an agreement with Kapila not to pursue further payment for his work as examiner because Merrill Lynch retained Kapila after the case was converted to Chapter 7 to provide testimony in federal court litigation pending against one of the principals of the debtor, Mr. Frank Amodeo. Although Merrill Lynch ultimately abandoned the litigation against Mr. Amodeo, concluding that he, just like his company, was financially insolvent, and Kapila was not required to testify, Merrill Lynch still believed that the retention and attendant payments to Kapila were conditioned upon an understanding that he would not seek any further payments from them for his duties as examiner. Lastly, Merrill Lynch argues that Kapila has failed to show any basis why the surcharge would be granted even if he were permitted, or the trustee was compelled, to seek such recovery.

Two issues are presented. Kapila argues that, in light of the trustee's refusal to voluntarily pursue a surcharge claim, he, with court approval, can step into the trustee's shoes and pursue recovery from Merrill Lynch on behalf of the estate pursuant to Bankruptcy Code Section 506(c). The first issue is whether Section 506(c) permits this type of derivative action. The second issue is whether the Court can or should compel the trustee to act contrary to his reasoned judgment and require him to pursue the surcharge litigation under Section 506(c).

▆▆▆ Bankruptcy Code Section 506(c) specifies when a surcharge is permitted against secured collateral and provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

A surcharge under Section 506(c) is not an administrative claim; rather, it is an assessment against a secured party's collateral. *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1067 (9th Cir. 2001). Surcharging collateral subject to a security interest is the exception and not the rule for recovering costs and expenses associated with the preservation or disposition of estate property. Ordinarily, the costs and expenses detailed in Section 506(c) are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral. *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir.1994) (*citing IRS v. Boatmen's First Nat'l Bank of Kan. City*, 5 F.3d 1157, 1159 (8th Cir.1993)). In some circumstances, however, these costs and expenses are charged against property subject to a security interest in order "to prevent a windfall to a secured creditor at the expense of the estate." 26 F.3d 481, 483 (*citing Boatmen's*, 5 F.3d at 1159). Section 506(c) allows the trustee to recover these amounts "from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor." 26 F.3d at 483. Here, Kapila argues that Merrill Lynch obtained the benefit of his efforts to preserve its collateral and, therefore, the Court should tax that collateral with his costs and expenses.

▆▆▆ Both issues before the Court here were also addressed by the bankruptcy

court in *In re Suntastic USA, Inc.*, 269 B.R. 846 (Bankr.D.Ariz.2001). In *Suntastic*, several administrative claimants filed motions seeking standing to pursue surcharge claims or, alternatively, an order requiring that the Chapter 7 trustee do so on their behalf. *Suntastic*, 269 B.R. at 847. Approximately $250,000 in post-petition cash collateral was available, but the total administrative claims asserted exceeded $400,000. *Suntastic*, 269 B.R. at 847. There were no unencumbered funds in the estate. 269 B.R. at 850.

The United States Bankruptcy Court for the District of Arizona ruled that the administrative claimants did not have standing to pursue such surcharge claims and also declined to force the trustee to do so where recovery would inure only to the benefit of the administrative claimants and not to the estate as a whole. The bankruptcy court based its ruling on three cases: the decision of the United Supreme Court in *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), the Ninth Circuit Court of Appeals in *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061 (9th Cir. 2001), and the Fourth Circuit Court of Appeals in *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481 (4th Cir.1994).

In *Hartford*, the operating Chapter 11 debtor failed to pay its monthly insurance premiums, but Hartford continued to provide insurance. When the case converted to a Chapter 7 case, Hartford filed an application to surcharge the collateral of a secured creditor to recover approximately $50,000 in unpaid premiums. The estate had no unencumbered funds from which Hartford could otherwise seek recovery.

The question before the United States Supreme Court was whether Hartford had standing to seek the surcharge or whether it could only be sought by the trustee. *Hartford*, 530 U.S. at 5–7, 120 S.Ct. at 1947–48; *Suntastic*, 269 B.R. at 848. Based on the express language of Section 506(c) "that specifically referred to 'the trustee,' and no other party," the Supreme Court concluded that only the trustee could recover under the statute "notwithstanding the lack of a specific prohibition against other parties bringing such a claim." *Suntastic*, 269 B.R. at 848. The Supreme Court explicitly rejected pre-Code practice and policy arguments urged in support of making Section 506(c) available to non-trustees, noting that the trustee's unique role made it "entirely plausible" that Congress might provide bankruptcy trustees with powers that were unavailable to others. *Hartford*, 530 U.S. at 7, 120 S.Ct. at 1947. The rule following *Hartford*, therefore, is that Section 506(c) is a remedy exclusive to the trustee. *Hartford*, 530 U.S. at 14, 120 S.Ct. at 1951. No other party has an independent right of recovery under Section 506(c).

In *Hartford*, however, unlike in the instant case and in *Suntastic*, the petitioner did not ask the trustee to pursue the surcharge claim or seek the bankruptcy court's permission to do so derivatively. Rather, the petitioner only asserted an independent right to use Section 506(c), which the Court unequivocally denied. *Hartford*, 530 U.S. at 13, 120 S.Ct. at 1951. Accordingly, the Supreme Court did not address the question now before this Court and also before the bankruptcy court in *Suntastic* regarding "whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under [Section] 506(c)." *Hartford*, 530 U.S. at 13, 120 S.Ct. at 1951, n. 5.

Without an explicit rule from the Supreme Court addressing either derivative actions or a trustee's refusal to pursue a

requested surcharge, the *Suntastic* court turned to the binding decision of the Ninth Circuit Court of Appeals in *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061 (9th Cir.2001) and the decision of the Fourth Circuit Court of Appeals in *Ford Motor Credit*, 26 F.3d 481 (4th Cir.1994). In *Debbie Reynolds*, the Ninth Circuit Court of Appeals explained that, following *Hartford*, unsecured creditors could not rely on Section 506(c) to surcharge collateral of a secured creditor under *any* circumstances.[3] *Debbie Reynolds*, 255 F.3d at 1065–66 ("*Hartford Underwriters* makes clear that [unsecured creditors] cannot, under any circumstances, seek a surcharge because [they have] no standing to do so."). Hence, derivative actions brought by third party beneficiaries to enforce the rights of another are, by definition, precluded under the Ninth Circuit Court of Appeals' interpretation of *Hartford*. Accordingly, the *Suntastic* court concluded "that, in the Ninth Circuit, even where the trustee has no economic incentive to pursue recovery under 506(c), nobody else may pursue surcharge—period." 269 B.R. at 849.

Having determined that no party other than the trustee is empowered or permitted to pursue surcharges under Section 506(c), the *Suntastic* court next turned to the decision of *Ford Motor Credit*[4] to determine whether a trustee could properly refuse a request to pursue surcharge. 26 F.3d 481. The Fourth Circuit Court of Appeals acknowledged that limiting the use of Section 506(c) to trustees was consistent with the Bankruptcy Code's fundamental purpose of providing an equitable distribution to similarly situated creditors and emphasized that "not only does a trustee usually have strong incentive to pursue § 506(c) claims, but both the trustee and debtor in possession have a fiduciary duty to pursue viable § 506(c) claims that would benefit the estate."[5] 26 F.3d at 484, 485. Notably, the "court went on to state that if a trustee refuses to pursue the 506(c) surcharge, the third party could seek a court order requiring the trustee to do so, request the court remove the trustee, or if the debtor in possession is in control of the estate, request the appointment of a trustee." 269 B.R. at 850, 26 F.3d at 485–86. Thus, the *Ford Motor Credit* decision endorsed one of the remedies sought here and in *Suntastic:* third party creditors can seek a court order requesting or compelling the trustee to seek surcharge.

Accordingly, based on *Ford Motor Credit*, the Arizona Bankruptcy Court in *Suntastic* determined that, in the right circumstances, courts could compel a

3. In *Debbie Reynolds*, the Ninth Circuit Court of Appeals explained that *Hartford* overruled one of its earlier decisions, *North County Jeep and Renault, Inc., v. Gen. Electric Capital Corp. (In re Palomar Truck Corp.)* 951 F.2d 229 (9th Cir.1991), in which the Ninth Circuit had held that parties providing a benefit to secured creditors may seek a surcharge under 506(c) when a trustee has no economic incentive to do so. *Debbie Reynolds*, 255 F.3d at 1066 (*citing Palomar*, 951 F.2d at 232).

4. Although the decision in *Ford Motor Credit* was rendered prior to the decision of the United States Supreme Court in *Hartford*, the case remains sound law. In *Ford Motor Credit*, the Fourth Circuit Court of Appeals also held that, under the plain language of Section 506(c), only trustees and debtors-in-possession have standing to recover costs from the collateral of a secured creditor. 26 F.3d at 486.

5. *See also, Suntastic*, 269 B.R. at 849 (*citing Kowal v. Malkemus (In re Thompson))*, 965 F.2d 1136, 1145 (1st Cir.1992) ("Chapter 7 trustees are 'charged with the fiduciary duty to administer the chapter 7 estate expeditiously in the best interests of the estate' "); *Martin–Trigona v. Ferrari (In re WHET, Inc.)*, 750 F.2d 149, 149 (1st Cir.1984) ("trustees 'owed a fiduciary duty to debtor and creditors alike to act fairly and protect their interests' ").

Chapter 7 trustee to pursue surcharge. The test articulated in *Suntastic* is "whether a trustee may refuse to pursue a Section 506(c) claim after request by an administrative claimant is whether doing so may conceivably benefit the estate, without regard to whether the action will benefit the requesting claimant." *Suntastic*, 269 B.R. at 850. Since the administrative creditor was unable to show that the estate would benefit, the court declined to compel the trustee to file the 506(c) claim against the secured creditor.

■ This Court holds that individual creditors lack standing to pursue Section 506(c) surcharge claims and adopts the test explained in *Suntastic*, finding the same conclusion is warranted here. As was the case in *Hartford* and *Suntastic*, there are no funds in the debtor's estate. The trustee has no money to hire a professional to pursue a Section 506(c) claim. Moreover, the trustee perceives that, even if such an action were filed, it would likely yield no benefit to the estate. The only creditor who conceivably could benefit is the movant and any expected recovery would be *de minimus* in light of the fact that the secured creditor received only $2,500 upon liquidating its secured collateral. Based on these circumstances, the Court concludes that it would be improper and unjust to require the trustee to take action contrary to his reasoned judgment that is unlikely to benefit the estate. There is simply no basis to compel the trustee to pursue surcharge. However, in a different case, the Court could conceive of a situation where the trustee would be compelled to bring a surcharge claim, if the litigation would benefit the estate. In this case, the movant has failed to demonstrate any such benefit.

■ Furthermore, only trustees and debtors in possession in Chapter 11 cases properly have standing to pursue surcharge claims. Trustees are in a unique position of having a global vantage point in a bankruptcy case. They act for the benefit of the entire estate attempting to maximize the value of the estate and increase distributions to creditors. No sole creditor holds the same perspective; only the trustee can assess whether the effort to pursue the surcharge recovery will increase the likelihood of assets available for distribution or simply drain the estate by incurring additional administrative costs such as attorney fees. Allowing an individual creditor to pursue a surcharge claim is not appropriate. Accordingly, the Motion is denied. A separate order consistent with this Memorandum Opinion shall be entered.