FILED
 JUL 09 2013
 1
 SUSAN M SPRAUL, CLERK
 2 U.S. BKCY. APP. PANEL
 OF THE NINTH CIRCUIT

 3 UNITED STATES BANKRUPTCY APPELLATE PANEL
 4 OF THE NINTH CIRCUIT
 5 In re: ) BAP Nos. AZ-11-1535-TaAhJu
 ) AZ-12-1213-TaAhJu
 6 POWELL’S INTERNATIONAL, INC., ) (Related Appeals)
 )
 7 Debtor. ) Bk. No. 10-02965-GBN
 ______________________________)
 8 LEWIS HUNT ALTON, )
 Appellant, )
 9 )
 v. ) MEMORANDUM*
10 )
 KEYBANK, N.A.; LOTHAR )
11 GOERNITZ, Chapter 7 Trustee, )
 )
12 Appellees. )
 ______________________________)
13
 Argued and Submitted on June 21, 2013
14 at Phoenix, Arizona
15 Filed - July 9, 2013
16 Appeal from the United States Bankruptcy Court
 for the District of Arizona
17
 Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding
18 ________________________________
19 Appearances: Lewis Hunt Alton, Appellant, argued pro se.
 __________________________________
20
 Before: TAYLOR, AHART,** and JURY, Bankruptcy Judges.
21
22
23
24
25 *
 This disposition is not appropriate for publication.
 Although it may be cited for whatever persuasive value it may
26 have (see Fed. R. App. P. 32.1), it has no precedential value.
 See 9th Cir. BAP Rule 8013-1.
27
 **
 Hon. Alan M. Ahart, United States Bankruptcy Judge for
28 the Central District of California, sitting by designation.
 1 INTRODUCTION
 2 Appellant Lewis H. Alton appeals from adverse rulings on two
 3 motions for reconsideration. First, the bankruptcy court denied
 4 reconsideration of an order (the “Sept. 12, 2011 Order”) denying
 5 Alton’s request for employment and compensation for services
 6 allegedly rendered in connection with a chapter 11 § 363 sale1
 7 (the “§ 363 Sale”). Alton failed to timely appeal from this
 8 order, so he sought and obtained an extension of the time to file
 9 this appeal. Appellees, however, successfully obtained an order
10 on a reconsideration motion reversing this determination (the
11 “2012 Order”).2 Alton timely appealed from this ruling.
12 Alton did not obtain a stay pending either appeal. Thus,
13 the § 363 Sale proceeds were distributed; the chapter 11 case was
14 converted to a case under chapter 7; and on November 13, 2012,
15 the chapter 7 trustee, appellee Lothar Goernitz (“Trustee”),
16 filed his report certifying that the chapter 7 estate is fully
17 administered (“Final Report”).3 The Final Report evidences that
18
 1
19 Unless specified otherwise, all chapter and section
 references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
20 all “Rule” references are to the Federal Rules of Bankruptcy
 Procedure, Rules 1001-9037. All “Civil Rule” references are to
21 the Federal Rules of Civil Procedure.
 2
22 On January 26, 2012, a motions panel issued an order
 suspending prosecution of the appeal from the Sept. 12, 2011
23 Order pending the bankruptcy court’s ruling on Appellee’s
 reconsideration motion. After the bankruptcy court issued the
24 2012 Order, from which Alton timely appealed, the motions panel
 issued an order that required briefing in the related appeals to
25 be filed concurrently. Alton filed the briefs in both appeals,
 as required, and we have considered all such briefing for
26 purposes of this disposition.
 3
27 We have exercised our discretion to independently review
 documents contained on the bankruptcy court’s electronic docket.
28 (continued...)

 - 2 -
 1 the chapter 7 case is administratively insolvent.4 As a result
 2 of the current status of the bankruptcy, we DISMISS the appeal
 3 from the 2012 Order as moot. And, as a result, we DISMISS the
 4 appeal from the Sept. 12, 2011 Order based on lack of
 5 jurisdiction.
 6 FACTUAL AND PROCEDURAL BACKGROUND5
 7 The chapter 11 debtor in this case owned and operated a
 8 Volvo franchised automobile dealership in Scottsdale, Arizona.
 9 KeyBank held liens on substantially all of Debtor’s assets. On
10 February 4, 2010 (“Petition Date”), Debtor filed its petition
11 under chapter 11.
12 On June 25, 2010, Debtor filed a motion under § 363 (“Sale
13 Motion”) seeking authorization for the sale of substantially all
14
15
 3
 (...continued)
16 See O’Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.),
 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan
17 Mortg Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP
 2003). We note that the chapter 7 was closed for a brief period
18 of time on November 21, 2012; however, the bankruptcy court
 entered an order reopening it the same day and re-appointing the
19 Trustee, as the case had been closed due to administrative error.
20 4
 Trustee also reduced his fee request from $52,750, the
 statutorily-based amount, to $12,776.06, paid from $30,000 carved
21 out from the Trustee’s sale of KeyBank’s real property collateral
 to pay some chapter 7 administrative expenses.
22
 5
 On December 12, 2012, Trustee filed a Notice of Election
23 Not to File Brief (“Trustee’s Notice of Election”). Trustee’s
 Notice of Election included an assertion in footnote 1 that
24 KeyBank, N.A. (“KeyBank”) “was improperly designated as an
 appellee by appellant and has also indicated to the Trustee that
25 it will not file a brief.” See BAP dkt. #42. The majority of
 the facts contained herein we obtained from Alton’s briefs and
26 his excerpts of the record. Some additional procedural and other
 background information we developed based on our independent
27 review of documents contained on the bankruptcy court’s
 electronic docket. See In re E.R. Fegert, Inc., 887 F.2d at
28 957-58.

 - 3 -
 1 of its assets free and clear of liens. The assets included all
 2 business assets related to the dealership.6 Four days later, the
 3 Debtor filed an emergency application to employ Alton to assist
 4 in the sale, as a “finder,” retroactively to the Petition Date
 5 (“Debtor’s First Employment Application”). The bankruptcy court
 6 approved the Debtor’s First Employment Application by order
 7 entered on July 28, 2010 (“Employment Order”), but made the
 8 employment effective only as of that date, not retroactively.7
 9 The bankruptcy court conducted a successful auction on the
10 Sale Motion on August 3, 2010. In October 2010, the bankruptcy
11 court entered a stipulated order on the Sale Motion (“Stipulated
12 Sale Order”).8 Proceeds of the sale, less some previously-
13
 6
14 The Sale Motion did not include Debtor’s real property,
 which was eventually sold pursuant to an application filed by the
15 Trustee after the case was converted. KeyBank was not paid in
 full on its allowed secured claim against the Debtor, and no
16 funds were generated for the benefit of unsecured creditors
 through either the Sale Motion or the subsequent sale of the real
17 property collateral. KeyBank did, however, consent to payment of
 some priority and administrative claims from its cash collateral
18 and sale proceeds.
 7
19 KeyBank filed a reservation of rights in response to the
 Debtor’s Employment Application. KeyBank did not object to
20 Alton’s employment, but reserved the right to object to any
 compensation “until further application and review of evidence
21 concerning services rendered and benefit to the estate.” Notice
 of Reservation of Rights, Bk. Dkt. #63. The Employment Order
22 specifically provided that it was without prejudice to the right
 of Debtor or Alton to apply for retroactive employment and
23 compensation. Eventually, the bankruptcy court required Alton to
 apply for such retroactive approvals. We render no opinion
24 regarding whether Alton’s employment needed to be approved
 retroactively as our decision here deprives us of jurisdiction to
25 review the issues raised by Alton in connection with his
 late-filed appeal from the Sept. 12, 2011 Order.
26
 8
 Recitals contained in the Stipulated Sale Order reveal
27 that Volvo Cars of North America, LLC (“Volvo”), a party to the
 Stipulated Sale Order, exercised its statutory and contractual
28 (continued...)

 - 4 -
 1 authorized disbursements to KeyBank and disbursement to the
 2 Arizona Department of Revenue for its administrative claim, were
 3 to be deposited in Debtor’s counsel’s trust account, with liens,
 4 claims, encumbrances, and interests attached, and subject to
 5 further order of the bankruptcy court.9
 6 After the auction, but before entry of the Stipulated Sale
 7 Order, Debtor filed a fee application seeking payment to Alton
 8 (“Alton’s First Fee Application”). Although Alton’s employment
 9 was made effective only as of July 28, 2010, Alton’s First Fee
10 Application sought compensation for services during the period
11 commencing on the Petition Date and ending August 20, 2010.10
12 KeyBank filed an objection to Alton’s First Fee Application on
13 multiple grounds.11 The bankruptcy court never entered an order
14 on Alton’s First Fee Application, but instead ordered Alton to
15 file a supplemented application. In response, Alton timely filed
16
17
 8
 (...continued)
18 right of first refusal and notified Debtor of its intention to
 purchase the assets at the price offered by the successful bidder
19 and under the same terms. Volvo also exercised its right to
 assign the assets it acquired.
20
 9
 The sale did not close, however, until sometime after
21 December 10, 2010, when the bankruptcy court entered a second
 stipulated order that resolved the Arizona Department of
22 Revenue’s motion for reconsideration of the Stipulated Sale
 Order.
23
 10
 The time records attached to Alton’s First Fee
24 Application reflect that all but three-quarters of an hour of his
 services were performed prior to the July 28, 2010 effective date
25 of his employment.
26 11
 The grounds included failure to obtain approval of
 employment for the period of time for which compensation was
27 sought, failure to justify retroactive approval, failure to
 satisfy U.S. Trustee’s Guidelines, failure to satisfy § 330(a)
28 requirements, and prematurity, as the § 363 Sale was not closed.

 - 5 -
 1 an Amended Application for Employment and Compensation (“Alton’s
 2 Amended Application”) seeking “nunc pro tunc appointment to serve
 3 the bankruptcy estate as a professional back to the petition
 4 filing date in February 4, 2010 as well as compensation for the
 5 period between then and now.” Bk. Dkt. #186 at 1:12-15. The
 6 bankruptcy court scheduled the hearing on Alton’s Amended
 7 Application for May 2, 2011.12
 8 Meanwhile, in February of 2011, the United States Trustee
 9 filed its motion to convert or dismiss the case (“Conversion
10 Motion”), and KeyBank filed its motion seeking bankruptcy court
11 authority to distribute funds from the closed § 363 Sale (“Motion
12 to Distribute”). The bankruptcy court granted the Motion to
13 Distribute in April of 2011; however, the order required $120,000
14 to be held in escrow “for the claim of Alton subject to further
15 hearing and order.”13 Bk. Dkt. #188. On May 24, 2011, the
16 bankruptcy court entered an order denying Alton’s Amended
17 Application (“Order Denying Amended Application”), pursuant to
18 the bankruptcy court’s extensive oral ruling rendered at the
19 May 2, 2011 hearing, and also ordered that the $120,000 held in
20 escrow be turned over to KeyBank. Shortly thereafter, the
21 bankruptcy court entered the order converting the case to a case
22 under chapter 7.
23 Alton timely filed a motion to reconsider the Order Denying
24 Amended Application, which drew an objection from KeyBank. The
25
26 12
 Neither Alton nor the record on appeal clearly explains
 why the matter was continued multiple times.
27
 13
 The order on the Motion to Distribute does not recite
28 the grounds on which the bankruptcy court based the hold-back.

 - 6 -
 1 bankruptcy court held the hearing on Alton’s motion for
 2 reconsideration on July 26, 2011. At the hearing, the bankruptcy
 3 court denied the motion for reconsideration and again placed
 4 extensive findings on the record. The bankruptcy court did not
 5 enter the order, however, until September 12, 2011. Alton filed
 6 an untimely notice of appeal on September 27, 2011 along with a
 7 single-page request for extension based on his receipt of the
 8 Sept. 12, 2011 Order on September 13, 2011. The bankruptcy court
 9 “summarily granted” the requested extension and deemed the notice
10 of appeal timely filed, subject to reconsideration (“Order
11 Granting Extension”). The Sept. 12, 2011 Order is the subject of
12 BAP No. AZ-11-1535 (the “First Appeal”).
13 Trustee and KeyBank jointly filed a timely motion on
14 October 7, 2011 for reconsideration of the Order Granting
15 Extension (“Joint Reconsideration Motion”). The Joint
16 Reconsideration Motion was based on the bankruptcy court’s
17 failure to require Alton to establish excusable neglect, as
18 required under Rule 8002(c) and the standards articulated in
19 Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S.
20 380, 395 (1993).
21 A week later, Alton filed a combined amended motion for
22 extension and response to the Joint Reconsideration Motion. And
23 a week thereafter, he filed a further supplemental brief. The
24 bankruptcy court held the final hearing on the Joint
25 Reconsideration Motion on April 3, 2012.14 At the hearing, the
26
27 14
 The final hearing was continued multiple times on the
 agreement of the parties due to Alton’s scheduling and personal
28 financial issues.
 - 7 -
 1 bankruptcy court granted the Joint Reconsideration Motion and
 2 read its findings and conclusions into the record. The order
 3 granting the Joint Reconsideration Motion was entered on April 4,
 4 2012. Alton timely filed a notice of appeal, which is the
 5 subject of BAP No. AZ-12-1213 (the “Second Appeal”).
 6 JURISDICTION
 7 The bankruptcy court had jurisdiction pursuant to 28 U.S.C.
 8 §§ 1334 and 157(b)(2)(B). Subject to the mootness discussion set
 9 forth below, we have jurisdiction under 28 U.S.C. § 158 as to the
10 Second Appeal. As a necessary result of our conclusion that the
11 Second Appeal is moot, we lack jurisdiction to review issues
12 raised by Alton in the First Appeal. See Anderson v. Mouradick
13 (In re Mouradick), 13 F.3d 326, 327 (9th Cir. 1994).
14 ISSUES
15 Is the Second Appeal moot?
16 STANDARD OF REVIEW
17 We have an independent duty to determine whether an appeal
18 is moot within the meaning of Article III’s case or controversy
19 requirement,15 and we consider the mootness issue de novo. See
20 United States v. Golden Valley Elec. Ass’n, 689 F.3d 1108, 1112
21 (9th Cir. 2012); Hunt v. Imperial Merchant Servs., Inc., 560 F.3d
22 1137, 1141 (9th Cir. 2009).
23 DISCUSSION
24 Ultimately, Alton seeks an order from either this Panel or
25
 15
 In September 2012, Trustee and KeyBank filed a Joint
26 Motion to Dismiss both these appeals for mootness. Alton filed
 opposition and a motions panel for the BAP denied the motion at
27 that time, concluding that appellees had “not met their heavy
 burden to demonstrate that these appeals are moot.” BAP Dkt. #39
28 (citation omitted).

 - 8 -
 1 the bankruptcy court requiring KeyBank to pay him for the benefit
 2 he argues he provided to KeyBank “as a result of his efforts to
 3 bring buyers” to the Debtor’s § 363 Sale. First Appeal Suppl.
 4 Apl’t Brief at 8. Alton argues that KeyBank, as a party to the
 5 appeals, has the financial ability and should be ordered to
 6 disgorge $126,000. Unfortunately for Alton, such a result is not
 7 a simple matter under the governing statutory law and procedural
 8 rules, which we acknowledge are complicated and technical by
 9 nature. Alton did not have his own legal counsel during the
10 bankruptcy proceedings. And, as he argues on appeal, Debtor’s
11 counsel may have let him down and KeyBank’s counsel may have
12 encouraged Alton’s participation while simultaneously protecting
13 KeyBank’s rights in its collateral. Nonetheless, and despite the
14 extensive time and effort Alton put into promoting the § 363 Sale
15 and the success he believes he achieved, our ability, as well as
16 the bankruptcy court’s ability, to consider “equity,” does not
17 afford either of us free rein. Alton has not pointed us to any
18 authority that would permit us, by virtue of either of these
19 appeals, to grant the relief he requests. Nor are we aware of
20 any such authority.
21 Our role in these appeals necessarily is limited to, first,
22 review of the order granting the Joint Reconsideration Motion.
23 Only if we were to conclude that the bankruptcy court abused its
24 discretion by denying extension of the time for Alton to file the
25 notice of appeal from the Sept. 12, 2011 Order would our role
26 then expand to review of the bankruptcy court’s denial of Alton’s
27 motion for reconsideration of the order denying Alton’s Amended
28

 - 9 -
 1 Application.16 But we may not fulfill even that limited role
 2 unless a live case or controversy exists. Therefore, as a
 3 threshold matter, we first must determine whether the Second
 4 Appeal is moot.
 5 As an appellate court, our jurisdiction is limited to actual
 6 cases and controversies. Motor Vehicle Cas. Co. v. Thorpe
 7 Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 980, 990
 8 (9th Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 2.). “The
 9 test for mootness of an appeal is whether the appellate court can
10 give the appellant any effective relief in the event that it
11 decides the matter on the merits in his favor. If it can grant
12 such relief, the matter is not moot.” Id. (internal quotation
13 and citations omitted). As discussed below, even if Alton were
14 to prevail on both appeals, there is no effective relief
15 available to Alton in the bankruptcy case.17
16
17 16
 The First Appeal was taken solely from the order denying
 the reconsideration of the order denying Alton’s Amended
18 Application. The issues addressed by Alton, however, relate to
 the appropriateness of the underlying order, which denied
19 retroactive employment and compensation in the chapter 11 case.
 In the bankruptcy court’s oral ruling denying Alton’s motion for
20 reconsideration, the bankruptcy court addressed the merits of
 Alton’s Amended Application. Thus, the bankruptcy court’s
21 decision to deny the motion for reconsideration was inextricably
 intertwined with the correctness of the original order.
22 Accordingly, we could conclude that Alton’s limited notice of
 appeal, if deemed to be timely, would not present a
23 jurisdictional bar to our review of the order denying him
 retroactive employment and compensation. See McCarthy v. Mayo,
24 827 F.2d 1310, 1314 (9th Cir. 1987).
25 17
 As previously discussed the only bankruptcy matter
 potentially at issue here is the employment and compensation
26 application. Alton’s briefs in these appeals primarily argue
 that KeyBank is directly responsible to pay him. We, as well as
27 the bankruptcy court, lack jurisdiction over any claims by Alton
 directly against KeyBank. See 28 U.S.C. § 1334. Thus, we take
28 no position with respect thereto.
 - 10 -
 1 Under the Bankruptcy Code, conversion of the bankruptcy case
 2 from chapter 11 to chapter 7 resulted in chapter 7 administrative
 3 expenses taking priority over unpaid chapter 11 administrative
 4 claims. § 726(b); and see Temecula v. LPM Corp. (In re LPM
 5 Corp.), 269 B.R. 217, 223 (9th Cir. BAP 2001). Put another way,
 6 until all chapter 7 administrative expenses are paid, a chapter 7
 7 trustee in a converted case is not authorized to pay
 8 administrative expenses incurred during the chapter 11 case.
 9 Here, the Trustee administered the chapter 7 case for 18 months
10 and was not able to pay all chapter 7 administrative expenses.18
11 In fact, the Trustee voluntarily reduced his own priority
12 statutory fees by nearly $40,000 to enable him to pay the United
13 States Trustee’s unpaid fees and fees and costs of Trustee’s
14 counsel from the carve-out from KeyBank’s real property
15 collateral sold by the Trustee during the chapter 7. The Trustee
16 certified that the estate is fully administered and all estate
17 assets and funds that came under his control have been properly
18 accounted for. If approved, Alton’s Amended Application would
19 entitle Alton, at most, to a chapter 11 administrative claim — a
20 claim for which he would receive no payment under the Bankruptcy
21 Code and the realities of this case. Thus, even if Alton were to
22 prevail on both appeals, the relief would be ineffective.
23 Alton argues, however, that KeyBank should be required to
24
 18
 The Trustee sought and obtained bankruptcy court
25 authority to make interim distributions on some chapter 7
 administrative claims by order entered on October 25, 2011. From
26 a $30,000 carve-out from the sale of KeyBank’s real property
 collateral, the bankruptcy court authorized Trustee to pay United
27 States Trustee’s fees of $1,625; Trustee’s attorneys’ fees and
 costs of $15,598.945; and Trustee’s voluntarily reduced statutory
28 fees.

 - 11 -
 1 disgorge funds to pay him, on the theory that KeyBank benefitted
 2 from Alton’s services. And Alton argues that he has the right to
 3 pursue surcharge against KeyBank under § 506(c). Section 506(c)
 4 of the Bankruptcy Code allows a trustee to “recover from property
 5 securing an allowed secured claim the reasonable, necessary costs
 6 and expenses of preserving, or disposing of, such property to the
 7 extent of any benefit to the holder of such claim.” Standing to
 8 seek surcharge, however, is limited to the trustee in a chapter 7
 9 case or the debtor-in-possession in a chapter 11 case. See
10 Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re
11 Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1066 (9th
12 Cir. 2001) (citing Hartford Underwriters Ins. Co. v. Union
13 Planters Bank, N.A., 530 U.S. 1, 6 (2000)).19
14 Here, Alton’s alleged services related to the § 363 Sale of
15 business assets in the chapter 11. The Debtor conceivably could
16 have sought approval to surcharge KeyBank’s collateral to pay an
17 allowed claim for Alton’s services if sought and obtained under
18 § 506(c) prior to conversion of the case. The Debtor, however,
19 lost control of the case when the case was converted to
20 chapter 7. The Debtor is no longer a debtor-in-possession with
21 standing to bring a § 506(c) motion. Therefore, only the Trustee
22 would have § 506(c) standing here, if a § 506(c) motion were
23 available under the circumstances.
24 But, here, such a motion is not available. Because the case
25 is administratively insolvent at the chapter 7 level and has been
26
 19
 Arguing against this point, Alton relies on case
27 authority in his appellate briefs that is no longer good law
 after the U.S. Supreme Court’s decision in Hartford Underwriters
28 Ins. Co. v. Union Planters Bank, N.A.

 - 12 -
 1 fully administered, the Trustee lacks any basis under the
 2 rationale of § 506(c) to seek to surcharge KeyBank’s now-
 3 liquidated collateral to pay Alton. See In re Smith Int’l
 4 Enters., Inc., 325 B.R. 450, 456 (Bankr. M.D. Fla. 2005) (trustee
 5 could not be compelled to pursue surcharge recovery that would
 6 not benefit the estate); and In re Suntastic USA, Inc., 269 B.R.
 7 846, 850 (Bankr. D. Ariz. 2001) (trustee need not take action
 8 that would benefit only an individual creditor or claimant). A
 9 surcharge motion here, if successful, would benefit no estate
10 creditors other than Alton.
11 Thus, the only appropriate provision under the Bankruptcy
12 Code that might provide effective relief to Alton is not
13 available to Alton as a matter of law.20 Alton has mentioned no
14 other, and we know of no other.21 Therefore, we are unable to
15
16 20
 Although we found no Ninth Circuit decisions on point,
 we are aware that at least one circuit court has held that once
17 the secured creditor’s assets have been sold unencumbered from
 the estate, the assets are no longer subject to surcharge under
18 § 506(c) because they are no longer property of the estate over
 which the bankruptcy court may exercise jurisdiction. See
19 Borrego Springs Bank, N.A. v. Skuna River Lumber, LLC
 (In re Skuna River Lumber, LLC), 564 F.3d 353, 355 (7th Cir.
20 2009).
21 21
 Administrative expenses are generally satisfied out of
 unencumbered assets. Id. Nothing in the record on appeal, nor
22 in the documents on the bankruptcy court’s electronic docket that
 we have reviewed independently, reveal the existence of any
23 payments made from unencumbered estate assets to chapter 11
 administrative claimants that could be subject to a motion to
24 disgorge for the purpose of achieving parity for Alton (if he
 were to prevail on both appeals) with and among other claimants
25 with allowed administrative claims at the chapter 11 level. The
 administrative claims paid during the case all appear to have
26 been paid from KeyBank’s cash collateral, with KeyBank’s consent,
 or from KeyBank’s § 363 Sale proceeds, again, with KeyBank’s
27 consent. KeyBank did not consent to pay Alton’s claim, was not
 itself paid in full, and the estate lacks any remaining assets to
28 be administered.
 - 13 -
 1 provide effective relief to Alton.
 2 Even if we were to reach the merits of the Second Appeal, we
 3 would be inclined to affirm. A request for extension of the
 4 deadline to file a notice of appeal under Rule 8002(c) is
 5 reviewed for abuse of discretion. Warrick v. Birdsell
 6 (In re Warrick), 278 B.R. 182, 184 (9th Cir. BAP 2002).
 7 Likewise, a motion for reconsideration is also reviewed for abuse
 8 of discretion. Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255,
 9 1262 (9th Cir. 1993). The bankruptcy court entered its Order
10 Granting Extension summarily, without articulation or any
11 analysis of the applicable legal standard under Rule 8002(c).
12 The bankruptcy court, thus, abused its discretion when it granted
13 the extension. See United States v. Hinkson, 585 F.3d 1247, 1262
14 (9th Cir. 2009) (a trial court’s failure to identify the correct
15 legal rule to apply to the relief requested is an abuse of
16 discretion). Nor was this error harmless.
17 On reconsideration, the bankruptcy court identified and
18 applied the correct standard articulated by the Supreme Court in
19 Pioneer, which has been used and applied in construing “excusable
20 neglect” under Rule 8002(c). See In re Warrick, 278 B.R. at 185.
21 The bankruptcy court found that the delay of one day was minimal;
22 the prejudice to Trustee and KeyBank was slight; and there was no
23 indication that Alton acted in bad faith. But, as to the fourth
24 Pioneer factor, the reason for the delay, the bankruptcy court
25 could not excuse Alton’s lack of knowledge of the rules, or the
26 “fact that he had the order within enough time to file a simple
27 notice to appeal, but he didn’t get that done.” Hr’g Tr.
28 (April 3, 2012) at 3:8-11. In essence, the bankruptcy court

 - 14 -
 1 found that Alton made choices that resulted in the late-filed
 2 notice of appeal. See id. at 15-16. The bankruptcy court, thus,
 3 did not abuse its discretion when it granted the Joint
 4 Reconsideration Motion, as its findings and application of those
 5 findings were not “illogical, implausible, or without support in
 6 inferences that may be drawn from facts in the record.” See
 7 United States v. Hinkson, 585 F.3d at 1251. Thus, if the
 8 bankruptcy court’s denial of Alton’s request for extension of the
 9 deadline to file the notice of appeal from the Sept. 12, 2011
10 Order were before us, we would affirm.
11 CONCLUSION
12 For the reasons set forth above, we DISMISS the Second
13 Appeal as moot, and, as a result, we DISMISS the First Appeal for
14 lack of jurisdiction.
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 - 15 -